## HICKOK PRODUCING & DEVELOPMENT CO. v. TEXAS CO.

### No. 10006.

Circuit Court of Appeals, Fifth Circuit.

May 20, 1942.

Rehearing Denied July 7, 1942.

Forrest D. Wright, of Cisco, Tex., and Walter G. Kirkbride, of Toledo, Ohio, and Earl Conner, Sr., of Eastland, Tex., for appellant.

H. S. Garrett, of Fort Worth, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit, brought July 29, 1936, was to recover amounts due plaintiff as lessor for residue gas from its lease. The claim was that though obligated by its contract of lease, to pay to the Texas Company, ⅛th of the price received by the defendant for the sale of residue gas, the defendant, on statements so designed and drawn as that plaintiff was deceived into believing that it was receiving pay for all of its residue gas sold, had paid it only ½ of its due, and that as a result of that deception, plaintiff did not discover, until a short while before the filing of the suit, that it had been defrauded and cheated by defendant.

The defense in general was that defendant had accounted to plaintiff for ⅛th of the price it had received for the residue gas. Particularized it was that it had bona fide sold the casinghead gas to Breckenridge Development Company, an affiliate, at first partly, later wholly, owned by the parent company, upon terms that the Breckenridge Company was to manufacture gasoline and pay defendant for only ½ of the residue gas; that therefore, only ½ of the residue gas sold to the Gas Company had belonged to defendant and it had paid plaintiff a full ⅛th of that ½. There was also a plea of the statutes of limitations of 2 and 4 years. Plaintiff replied by a plea expressly denying that the defendant had ever sold the

gas, casinghead gas or residue gas to the Breckenridge Company or made any contract for sale to same, and there was a confused and rambling trial before the court without a jury. At the end of it, the district Judge found that defendant had not proven the sale to its subsidiary of the casinghead gas as alleged by it; that defendant had actually used the casinghead gas to manufacture gasoline and had accounted to plaintiff for the gasoline as it was obligated under the lease to do in case of such use; that defendant had sold the residue gas to the gas company and had failed to account to the plaintiff for its ⅛th thereof. On the plea of limitation he found that defendant had, by the form of its statements and settlements, deceived plaintiff as to the true facts and led plaintiff to believe and it did believe that defendant was fully and correctly accounting to it; and that such deception and concealment of the true facts had prevented the statute of limitations from running against plaintiff's suit. On these findings he found, and gave judgment for plaintiff. Appellant is here insisting that these findings and the judgment are erroneous. It urges upon us particularly that the evidence does show a sale to Breckenridge and that though Breckenridge was a subsidiary, the sale was valid and should be given effect. It insists too that the record does not support the finding of the court that defendant had so deceived plaintiff that limitation had not run against it.

We cannot agree with appellant. Plaintiff sues upon a contract which specifically fixes its rights. Under it, defendant agreed to pay the plaintiff for ⅛th of all the oil, gas and casinghead gas, including residue gas, which may be produced from the premises. But this is not all. The lease went into detailed provisions as to the amounts to be paid under various contingencies in the handling of the gas. Briefly summarized these are the provisions. (1) Should gas or casinghead gas be used for the manufacture of gasoline, then for its ⅛th of the casinghead gas the Texas Company shall receive ⅛th of the price per gallon received by Hickok Producing and Development Company, for gasoline of like grade and quality. Then follows a detailed statement of how to determine quality and price. (2) If gas or casinghead gas is not used for the manufacture of gasoline but is sold, then ⅛th of the gross proceeds shall be paid to the Texas Company. (3) If it is not sold, but used, except for the manufacture of gasoline, then ⅛th of the market price in that vicinity. (4) If the Texas Company's ⅛th of the residue gas, at its option, should not be delivered to it, then it shall be paid ⅛th of the price received by Hickok Producing and Development Company. (5) It is understood that in accounting for residue gas, 20% of the total volume of gas or casinghead gas received from the premises shall belong to Hickok for purposes of plant operation.

To support its claim of having made a sale, appellant in a confused way, offered evidence that there was a contract between Breckenridge and Hickok, for the sale of casinghead gas to make gasoline and then, without proving when the contract was made, what it covered as to leases and properties, when it began or ended, or what were its precise terms as to the lease and properties in suit, it offered proof of the general custom of that part of the country in making contracts for the manufacture of gasoline and the sale of residue gas. No witness testifies to the terms of the supposed contract between Hickok and Breckenridge. At most, the record presents merely a contention, but not testimony, that Hickok had sold the casinghead gas to Breckenridge on an arrangement by which Hickok was to have only ½ of the gasoline and ½ of the residue gas so that plaintiff's interest would be only ⅛th of ½ of gasoline and gas, instead of ⅛th of the whole. Thoroughly refuting this contention, the proof shows that Hickok in making the contract with plaintiff, and as an inducement to its making, advised plaintiff that it had a gasoline plant and was making its own gasoline and at no time advised plaintiff that Breckenridge was the owner of the plant or was manufacturing the gasoline and that it has, at all times, accounted to plaintiff not for ⅛th of ½ but for ⅛th of the whole of the gasoline. Further, until this controversy arose, Hickok, at no time, claimed that it owed plaintiff for any less than ⅛th of the whole of the gasoline and never, at any time, advised plaintiff that it was paying plaintiff for only ⅛th of the ½ of the residue gas.

Under these facts we cannot say as we must, in order to overturn them, that the findings of the district judge were wholly erroneous. On the contrary, we think no other reasonable conclusion could

be arrived at than that defendant failed to prove its defense.

We need not determine and we do not determine that defendant's affiliation with Breckenridge was such that a contract fairly made between them would not be given effect. We do determine though that when corporations affiliated as these are, and under facts like those in this case, undertake to defeat or limit the recovery of a third person, who has dealt with one of them, by a claim that they have made binding contracts which affect the third person's rights, their proof must be clear and positive that this is so. Cities Service Co. v. Koeneke, 137 Kan. 7, 20 P.2d 460, 87 A.L.R. 16; Church Co. v. Martinez, Tex. Civ.App., 204 S.W. 486.

Upon the defense of limitation, it is the law that, deception and concealment of the cause of action aside, the statute commences to run on moneys due as royalties under a written contract within four years from the time that they become due. But it is the law too that anything actively done to conceal the accrual of the action tolls the statute. The law of Texas is well settled on this point. "Mere failure of a party to disclose a fact is not necessarily fraudulent concealment, but only silence is permitted. Any statement, word or act which tends to the suppression of the truth, renders the concealment fraudulent." 28 Tex.Jur., page 165; Parker Securities Co. v. Owen, Tex.Com.App., 1 S.W.2d 271; Owen v. King, 130 Tex. 614, 111 S.W.2d 695, 114 A.L.R. 859. In Arkansas Natural Gas Corp. v. Sartor, 5 Cir., 78 F.2d 924, 929, this court thus stated the rule: "Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry." If, in this case, the defendant had made no statements at all of amounts due or had made the statements show that defendant was being paid only for $\frac{1}{8}$th of $\frac{1}{2}$ instead of for $\frac{1}{8}$th of the whole, the statute would not have been tolled. When however, statements are drawn and settlements are made, as here, so as to create the impression that payments are being made in accordance with the contract and plaintiff is, as here, deceived by these positive acts of defendant, there is the concealment which tolls the statute.

The judgment was right. It is affirmed.