COMMONWEALTH EDISON COMPANY
et al., Plaintiffs,
v.
ALLIS–CHALMERS MANUFACTURING
COMPANY et al., Defendants
(nineteen cases).

CENTRAL ILLINOIS LIGHT COMPANY
et al., Plaintiffs,
v.
ALLIS–CHALMERS MANUFACTURING
COMPANY et al., Defendants
(nine cases).

CENTRAL ILLINOIS PUBLIC SERVICE
COMPANY, Plaintiff,
v.
ALLIS–CHALMERS MANUFACTURING
COMPANY et al., Defendants
(nine cases).

Civ. A. Nos. 61 C 1277 to 61 C 1285,
61 C 2068 to 61 C 2077, 61 C 1688 to
61 C 1696, 61 C 2179 to 61 C 2187.

United States District Court
N. D. Illinois, E. D.

Aug. 28, 1962.

See also 207 F.Supp. 252.

Charles A. Bane, Robert W. Bergstrom, Seymour F. Simon, Thomas C. McConnell, Lee A. Freeman, William J. Froelich, Chicago, Ill., Van B. Wake, Milwaukee, Wis., Daniel P. Ward, State's Attorney of Cook County, Ill., Barnabas F. Sears, James O. Smith, Chicago, Ill., for plaintiffs.

John T. Chadwell, Hammond E. Chaffetz, Holmes Baldridge, Edward R. Johnston, W. Donald McSweeney, John Paul Stevens, Earl E. Pollock, Robert C. Keck, Roland D. Whitman, Timothy G. Lowry, Harold T. Halfpenny, Lloyd M. McBride, Neil McKay, Jacob H. Martin, Edward R. Adams, Brainerd Chapman, Chicago, Ill., for defendants.

ROBSON, District Judge.

In this memorandum the Court is concerned with the breadth of construction to be given the statute of limitations provision of Section 4B of the Clayton Act, 15 U.S.C.A. § 15b as presented by Part II of defendants' motion of February 1, 1962. The motion, made by 27 corporate defendants, variously involved in some 37 causes, challenges

"all allegations of damage for any period prior to the time period of the statute of limitations provided in Section 4B of the Clayton Act (15 U.S.C.A. § 15(b)) and all allegations relating to the alleged fraudulent concealment of the causes of action; or, in the alternative pursuant to Rules 12 and 56 [28 U.S. C.], for an order or judgment dismissing:

"1. Count I in each complaint wherein the same cause of action (except for the time period involved) is pleaded in two counts; and

"2. All claims in each of the single count complaints and all claims in Count II of multiple count complaints for damages during periods which antedate the time limitations provided by Section 4B of the Clayton Act."

The Act provides:

"Any action to enforce any cause of action under sections 15 or 15a of this title *shall be forever barred unless commenced within four years after the cause of action accrued.* No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

This provision was enacted July 7, 1955, to take effect six months thereafter. It is asserted that the various complaints cover as much as a twelve-year period beginning on or about January 1, 1947, and continuing until sometime in 1960, which charge the defendants as actively and fraudulently concealing the existence of the respective conspiracies.

The asserted legal bases of the motion to strike are that the statute is substantive, absolute, and bars causes unless commenced within four years after the cause of action accrued, and, the statute, not being procedural cannot be tolled for fraudulent concealment of the cause pending plaintiffs' discovery thereof.

■ This Court concludes that Section 4B is to be construed as being tolled by *fraudulent concealment*—as contrasted with nontolling by virtue of mere failure of an injured party timely to *discover* the existence of a cause of action.

The bases for this conclusion are:

(1) The legislative history, especially as revealed in the colloquy between Mr. Celler, the sponsor of the provision, and Mr. Patman, confirms a Congressional intention to read into the limitations provision an exception for fraudulent concealment. The earlier tendered, and rejected, exceptions pertained to discovery, of the existence of a cause of action, and not to fraudulent concealment thereof.

(2) The limitations provision of the Clayton Act is more properly akin to procedural than substantive in nature and therefore not subject to a strict construction.

(3) The doctrine of Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874), and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), of reading "into *every* federal statute of limitation" the equitable doctrine excepting from the statute's operation cases of fraud, and tolling the statute therefor, is applicable to Section 4B of the Clayton Act.

These very issues have recently received consideration in five different federal districts, resulting in three holdings in accord with defendants' view that there is an inelastic four-year limitations period, and two holdings that the limitation provision is tolled by fraudulent concealment. The Court has read the transcript of proceedings in Brigham City Corporation v. General Electric Company, Civil Action No. C 16–62 and .Provo City Corporation v. General Electric Company, et al., No. C 28–62, wherein Judge A. Sherman Christenson (D.C. Utah) ruled orally that he was

"clearly of the opinion that the statute of limitations * * * cannot be deemed to have read into it the so-called doctrine of concealment or the doctrine of discovery or a conglomeration of those doctrines by which the fact finder or the Court would let the decision as to the application of the statute turn upon the degree with which either subjective intention or objective action with regard to concealment was applied or was present.

"An action for conspiracy I must take as one not in the category of the traditional action for fraud * * *. These things can't be regarded as making the statutory action one as in the category of an action for fraud. I'm going to tentatively make that ruling; and unless something is called to my attention which is controlling or rea-

sons that persuade me otherwise, I'll pursue that position * * *. I'll strike those allegations (re fraudulent concealment) * * *." (In an oral decision Judge Waldo H. Rogers of Albuquerque, New Mexico, followed that of Judge Christenson).

Judge William H. Becker of Kansas City, Missouri has ruled similarly in two cases[1] before him. In a memorandum on the ruling he stated several considerations upon which his decision was founded. He considered as significant the lack of an express exception in Section 4B suspending the running of the four year period during the time the wrong was fraudulently concealed, the deliberate elimination of provisions suspending the running of the statute until the date of discovery, and "the long established rule that, when Congress creates a new right of action and explicitly limits the time in which the action may be brought, the explicit limitation governs and is not affected by the general federal doctrine employed to bar inequitable reliance on statutes of limitation." Judge Becker also considered the subject matter of the legislation and the effect that extending the period would have upon the dockets of the courts before which these antitrust cases are pending. With respect to the latter point, he stated:

"The foreseeable effects of the application of equitable principles of suspension and estoppel upon the ability of the courts to process anticipated litigation should be given some consideration. In this connection there is the practical consideration that these antitrust cases and other cases ordinarily on the dockets may overtax the capacities of the courts if the period of limitation can be extended backward in time as contended by the plaintiff. Congress should be assumed to have had in mind the capacity of the courts to process the authorized litigation. If plaintiff's contention is sustained there is no definite limit in time beyond which treble damage actions are barred."

In contrast, Judge Wilfred Feinberg of the Southern District of New York, denied similar motions in Atlantic City Electric Company et al. v. General Electric Company, D.C., 207 F.Supp. 613. He stated that he was

"* * * persuaded that Moviecolor[2] provides the complete answer to all of defendants' contentions * * *."

In answer to the argument that the applicable statement in the opinion of Judge Friendly in the Moviecolor case, supra, was dictum, he further stated

"* * * analysis of Moviecolor compels the conclusion that the appellate court necessarily found that fraudulent concealment applies to Section 4B.

"The complaint in Moviecolor was filed in 1959 on a claim which had aged for almost 30 years. The lower court explicitly, and the Court of Appeals implicitly, recognized that Section 4B applied to the complaint before it. If the doctrine of fraudulent concealment did not apply to the action in Moviecolor and, therefore, did not toll the four year time limit of Section 4B, then the action was clearly barred since the claim arose almost 30 years before. * * * Therefore, to reach the ultimate issue decided in Moviecolor —that the federal fraudulent concealment doctrine also tolled the New York statute of limitations— the Court of Appeals first decided that fraudulent concealment was an existing federal doctrine and that it attached to Section 4B.

"The Court of Appeals further decided, on policy grounds and the

1. Kansas City, Missouri v. Federal Pacific Electric Company, Kansas City, Missouri v. General Electric Company, 210 F. Supp. 545.

2. Moviecolor, Limited v. Eastman Kodak Company, 288 F.2d 80 (2d Cir.1961).

imputed purpose of Congress, that a uniform rule was to be preferred in the federal courts on the effect of the wrongdoer's concealment on the measuring period. This explains the significance of the word 'even' in the holding already quoted above (288 F.2d at 83):

" 'the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act *even* when a state statute is used to measure the period * * *.' (emphasis supplied).

"The Court was satisfied that the result was in accord with legislative intent. Thus, it stated (id. at 84):

" 'It seems far more likely that Congress would have desired the federal suitor it was creating to have the benefit of the federal rule prolonging the period of suit during concealment by the wrongdoer. This is particularly so when, as under the Clayton Act, enforcement of the right often serves not merely private but public ends. * * * ' "

"Moviecolor makes abundantly clear the view of the Court of Appeals that fraudulent concealment applies to Section 4B. * * *

" * * * Accordingly, on what I conceive to be the clear authority of Moviecolor, defendants' motion is denied."

Judge Feinberg concluded the order involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation.

In an opinion filed August 24, 1962, Judge C. William Kraft, Jr. of the Eastern District of Pennsylvania, ruled in favor of plaintiffs on this issue.[3] He rejected arguments advanced by defendants based upon the legislative history,

the "clear meaning" of Section 4B and its being substantive rather than procedural, and thus not subject to being tolled by the fraudulent concealment doctrine. He concluded that:

"A thorough study of the legislative history impels us to the conclusion that it was the intent of Congress that the limitations provision in § 4B be construed in the same manner as had the state statutes of limitations, i. e., as purely a statute of repose, affecting no substantive rights, and subject to the well-settled doctrine of fraudulent concealment."

There has also been a decision of especial pertinency in another district. In Michigan, Judge Wade H. McCree, Jr., in the case of Gaetzi, d. b. a. John A. Gaetzi Distributing Co. v. Carling Brewing Co., D.C., 205 F.Supp. 615, held:

"*We are dealing here with a federally-created right conjoined with a federal statute of limitations. In such a case the extension of limitations is governed by 'federal equitable doctrine.'* Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. [636] (1874). * * *

" * * * *The rationale underlying the principle [is] that affirmative acts of concealment must be shown except in cases founded on fraud or breach of fiduciary duty.*

" * * * *(C)oncealment necessitates the commission of affirmative acts. Mere silence, where there is no duty to speak, does not toll the statute.*" (Italics added.)

He held that in that case the conspiracy could have been discovered by due diligence well within the statutory period.

1. *Legislative History.* Defendants lay great stress on the legislative history of Section 4B as conclusive evidence of Congressional intent to achieve strict and invariable uniformity of limitations.

---

3. United States of America and Tennessee Valley Authority v. General Electric Company; United States of America v. General Electric Company, D.C., 209 F. Supp. 197.

provisions throughout the nation, where, heretofore, they state, there was a

"morass of often conflicting and generally confusing decisions which left both plaintiffs and defendants in doubt as to which state's statute applied, which statute within a given state controlled, when the statute began to run, and the circumstances, if any, under which the running of the statute was tolled."

They cite the fact that the Reports from both Houses indicated that

"one of the primary purposes of this bill [was] to put an end to the confusion and discrimination present under existing law where local statutes of limitations are made applicable to rights granted under our Federal laws. This will be accomplished by establishing a uniform statute of limitations applicable to all private treble damage actions as well as Government damage actions, of 4 years." U.S.Code Cong. and Adm.News 1955, p. 2331.

Bills were initiated in 1949 providing that the statute should not begin to run until *"discovery* by the plaintiff of the facts upon which he relies for proof of the existence of conspiracy, if the plaintiff has exercised due diligence in seeking to discover such facts." The Congressional subcommittee hearing discussion revealed this language was thought necessary to protect plaintiffs against alleged instances of fraudulent concealment. Defendants state that many witnesses objected "strongly" to the "concealment" provision, including Professor Milton Handler of the Columbia Law School, objecting on the ground that it would introduce an "uncertainty" which is repugnant to the very idea of a statute of repose. He was joined in this view by members of the New York State Bar Association and the American Bar Association. The bill passed without the "concealment" provision.

In the following Congress new bills were introduced seeking to revive the "concealment" exception, but failed. Despite Mr. Patman's efforts to insert such a provision into the Act, which became the present Section 4B, the bill passed without it. From this history, defendants argue that a provision specifically rejected cannot be read into the statute by inference.

A minute study of the earlier bills in Congress is presented in the defendants' briefs, disclosing that Congress rejected legislation which would allegedly toll the proposed statutes of limitation by reason of plaintiff's *failure to discover* the alleged conspiracy and not for fraudulent concealment. They quote from the statements of Professor Milton Handler indicative of the nondesirability of importing into a statute of repose a mental element (the discovery element) and urging a definite limitation period, on the ground that one does not suffer injury without his knowledge. They cite the Senate Committee Report on Section 4B wherein it is stated that the Committee recognized that

" * * * in many instances the long duration of such proceedings taken in conjunction with a lengthy statute of limitations may tend to prolong stale claims, unduly impair efficient business operations, and overburden the calendars of courts. The committee believes the provisions of this bill will tend to shorten the period over which private treble-damage actions will extend by requiring that the plaintiff bring his suit within 4 years after it accrued or within 1 year after the Government's case has been concluded.

"While the committee considers it highly desirable to toll the statute of limitations during a Government antitrust action and to grant plaintiff a reasonable time thereafter in which to bring suit, it does not believe that the undue prolongation of proceedings is conducive to effective and efficient enforcement of the anti-trust laws."

There follows what this Court deems to be a critical colloquy between Mr.

Celler, the proponent of the legislation, and Mr. Patman:

"Mr. Celler: The statute of limitations will start running from the time the action accrues, not from the time of discovery. If you make it time of discovery, then you practically have no statute of limitations at all. * * * *We provide that the 4-year statute shall start to run from the time of the accrual of damages,* from the time the wrong was done, not from the time of discovery.

"Mr. Patman: *Even in the case of fraud or conspiracy?*

"Mr. Celler: *No. In the case of fraud or conspiracy the statute of limitations only runs from the time of discovery.*

"Mr. Patman: That is the point I wanted to make sure of. You are not attempting to change that particular part of it?

"Mr. Celler: Not at all." (Italics supplied.)

Defendants eschew this colloquy completely on the ground that "Congressmen cannot accomplish their legislative goals in this manner," citing Pennsylvania Railroad Company v. International Coal Mining Company, 230 U.S. 184, at p. 199, 33 S.Ct. 893, at p. 897, 57 L.Ed. 1446 (1913), where it was said:

"But while they may be looked at to explain doubtful expressions, not even formal reports—much less the language of a member of a Committee—can be resorted to for the purpose of construing a statute contrary to its plain terms, or to make identical that which is radically different."

In that case, the provision contended for had been omitted from the Act as finally reported, so that the Court deemed the omission not only "significant" but "con-clusive." The defendants further assert that

"the primary function of statutory construction is to effectuate the intent of Congress, and that function cannot properly be discharged by reliance upon a statement of a single Congressman, in the face of the weighty countervailing considerations which are present."

quoting from Federal Trade Commission v. Anheuser-Busch, Inc., 363 U.S. 536, 553, 80 S.Ct. 1267, 1276, 4 L.Ed.2d 1385 (1960). We do not have here the "weighty countervailing considerations present" to overcome the extremely pertinent statements of Mr. Celler, corroborated as they are by well-established judicial precedent, hereinafter discussed.

The Court concludes therefore that the legislative history of Section 4B discloses simply that the earlier bills had included proposals for tolling for *non-discovery* of the existence of a cause of action, as distinguished from tolling for fraudulent concealment, so that Congressional rejection of provisions of that nature is not significant. The colloquy of Mr. Celler and Mr. Patman, hereinabove quoted, corroborates this conclusion and further emphasizes the true intent of Congress to incorporate into Section 4B the fraudulent concealment tolling exception.

■ 2. *Procedural or Substantive Character of Section 4B.* A legal problem fraught with confusion is presented as to the nature of the statute of limitations added by Section 4B of the Clayton Act. Defendants deem it a substantive provision, being applicable to a right created by statute and not existing at common law,[4] and therefore subject to strict construction and not expandable by implied reading into it of equitable doctrine, of tolling for fraudulent concealment. Plaintiffs on the other hand con-

4. Sun Theatre Corp. v. RKO Radio Pictures, 213 F.2d 284 (7th Cir.1954); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96; Scott v. Railroad Retirement Board, 227 F.2d 684 (7th Cir.1955); United States v. Borin, 209 F.2d 145 (5th Cir.1954) cert. den. 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647.

sider it procedural and subject to a liberal construction.

The Court is of the opinion that Section 4B is procedural in nature. It was not passed as an integral part of the statute creating the right, *but many decades later*. It was passed because of the need for an overall, uniform statute to replace the application of the many varying statutes of limitations of the states where suits were instituted.

The antitrust acts, other than Section 4B, have been held entitled to broad, rather than strict construction, so there would seem to be no real reason not to extend that same breadth of construction to the newly added limitations provision.

While treble damage actions do have some aspects that could be considered punitive from a defendant's point of view, they have on the whole been construed to be compensatory, based as they are on a claimant's own damages. The treble damage suit is instituted by the claimant alone, not on the relation of the government, as in a *qui tam* or informer's suit.

Defendants point out that since many courts [5] have held Section 4 punitive, rather than compensatory, a strict construction is in order, precluding reading into the act "additional and unforeseen penalty never contemplated by Congress."

They also assert that the express inclusion of one tolling exception provision negates a Congressional intention to include any tolling provision not expressed. They stress the use of the words "any" and "forever" as significant words of the statute, Section 4B.

The Supreme Court's delineation of the concepts of penal and remedial have been stated in Huntington v. Attrill, 146 U.S. 657, at p. 668, 13 S.Ct. 224, at p. 228, 36 L.Ed. 1123 where the court said:

"The test whether a law is penal, * * * is whether the wrong sought to be redressed is a wrong to the *public,* or a wrong to the *individual,* according to the familiar classification of Blackstone * * *. 'All damages for neglect or breach of duty operate to a certain extent as a punishment; * * * The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity.'" (Italics supplied.)

On this point the decision in Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 66, 51 L.Ed. 241, is deserving of especial consideration, it being a treble-damage suit brought by a city for injuries caused by a conspiracy which affected the price the city had to pay for items it purchased. The Supreme Court held that a federal five-year statute was *inapplicable* which concerned "any 'suit or prosecution for any *penalty* or forfeiture, pecuniary or otherwise, accruing under the laws of the United States,' * * *. The construction of the phrase '*suit for a penalty,*' and the reasons for that construction have been stated so fully by this court that it is not necessary to repeat them. Indeed the proposition hardly is disputed here. Huntington v. Attrill, 146 U.S. 657, 668 [13 S.Ct. 224, 36 L.Ed. 1123]; Brady v. Daly, 175 U.S. 148, 155, 156 [20 S.Ct. 62, 44 L.Ed. 109]." (Italics supplied.) It was also held that the cause did not fall within the state statute of one year for "*statute penalties.*"

■ It is apparent to the Court that these statements of the Supreme Court are binding in interpreting the character of Section 4B because we are now construing a *Federal* act, and are no longer dealing with a state's viewpoint of its own statute.[6]

---

5. Sun Theatre Corp. v. RKO Radio Pictures, 213 F.2d 284 (7th Cir.1954); Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 191 F.2d 912, 914 (7th Cir. 1951), cert. den. 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704; Schiffman Bros. v. Texas Co., 196 F.2d 695, 697 (7th Cir. 1952).

6. It is interesting to note that the Supreme Court in Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, at

Also pertinent to this discussion are the several Seventh Circuit Court of Appeals' decisions, which have successively adhered to the interpretation that the Clayton Act treble-damage provision was punitive and therefore to be strictly construed. The Court of Appeals was, however, dealing with a fact situation *antedating* the enactment of the Federal Statute of Limitations, Section 4B in 955, and was applying the *Illinois* statute of limitations, S.H.A. ch. 83, § 15, in consonance with the nation-wide practice of reading into the Clayton Act the state statute of limitations in the absence of any Federal statute of limitations. The Court was, therefore, confronted with the problem of *which Illinois* statute of limitations to use, conformably to the way in which *Illinois* courts had interpreted the treble damage suits to be. The three opinions, by the late Judge Lindley, were Sun Theatre Corp. v. RKO Radio Pictures, Inc., 7 Cir., 213 F.2d 284 (1954); Schiffman Bros., Inc. v. Texas Co., 7 Cir., 196 F.2d 695 (1952), and Hoskins Coal & Dock Corp. v. Truax Traer Coal Co. et al., 7 Cir., 191 F.2d 912 (1951).

In the Sun Theatre Corporation case, supra, the Court was asked to review and overrule its prior Schiffman and Hoskins decisions but it did not accede. In the Sun Theatre case it was said at p. 287 of 213 F.2d:

"* * * Giving to this language its plain meaning, we think the only permissible interpretation is that the remedy afforded is treble damages, *penal in nature* and susceptible therefore to all restrictions surrounding an action of such nature. * * * 'The verdict should represent actual damages sustained, and *two thirds of the judgment is a penalty* which Congress has seen fit to impose * * *.' " (Italics supplied.)

583, 62 S.Ct. 1216, at 1223, 86 L.Ed. 1682 (1942), stated that "The liquidated damages for failure to pay the minimum wa-

Then he cites a statement by the senatorial sponsor of the Sherman Act (15 U.S.C.A. § 1 et seq.) that it established a "penalty, three-fold damages." However, the Sun Theatre opinion, supra, goes on to make the following very significant statement at pp. 287–288:

"Plaintiff contends, with support in briefs filed by *amici curiae*, that we should reconsider our decisions in Hoskins and Schiffman cases, that an action under Section 4 of the Act is governed by the Illinois two year statute. It is urged that we overlooked the postulate announced in Bell v. Farwell, 176 Ill. 489, 52 N.E. 346, 42 L.R.A. 804, * * * that, for purposes of the application of Illinois law, the courts of that state accept whatever characterization is placed on a statutory cause of action by the courts of the jurisdiction enacting the statute. Applying this rule, it is said that the courts of Illinois would find, on authority of Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, * * * the remedy of treble damages provided by the Act to be remedial and, therefore, not governed by the two year statute.

"This argument is premised on a misapprehension of what was decided in Hoskins and Schiffman. As we said in the latter, 'We pointed out [in Hoskins] that *the real question facing us* * * * *was not whether the action was one to recover a statutory penalty within the meaning of any federal statute but whether actions such as this are limited to a period of two years under the Illinois statutes, i. e., whether actions to recover treble damages must be commenced in Illinois within two years.* It is of no significance that the cause of action arises under federal statutes.' * * *

ges * * * are compensation, not a penalty or punishment by the Government."

This postulate refutes the basic premise on which plaintiff and amici rely, namely, that those cases look to the state law to characterize the action as penal or remedial. These decisions are but a necessary consequence of the basic principle that statutes of limitation affect the remedy merely, not the substantive right.

"* * * We are * * * concerned * * * with a question of procedure, namely, what Illinois Statute limits the prosecution of a cause of action for treble damages and attorney's fees. *Irrespective of the tag affixed to a statutory cause of action, if we find that it falls within that category of suits which the courts of the state hold to be limited by the two year statute, our inquiry comes to an end.* As we indicated in Hoskins, 191 F.2d at page 914, this principle is in accord with Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241." (Italics supplied.)

In the Hoskins Coal & Dock Corp. v. Truax Traer Coal Co. et al., supra, case, a treble damage Clayton Act case, the Court specifically pointed out that:

"*Congress has enacted no statute of limitations governing private actions for treble damages under the Clayton Act.* Consequently, to ascertain the applicable limitation, we must look to the statutes of the state where the cause of action arises and in which suit is brought * * * *and, in determining which of several provisions of the state statute will control, we are bound by the interpretations of those statutes by the courts of the State.* * * * 'The courts of the United States, in the absence of legislation upon the subject by congress, recognize the statutes of limitations of the several states, and give them the same construction and effect which are given by the local tribunals. * * * [T]hreefold damages and attorneys

fees are in the nature of a penalty not recoverable except by virtue of the statute. When 'the object is clearly to inflict a punishment on a party for violating' the statute, it is penal in character, and the circumstance that in punishing, remedy is likewise afforded to those having an interest in the observance of the statute is unimportant. * * * [Federal] cases referring to such a recovery as a 'penalty' of triple or treble damages include [citing many cases]."

Again in Schiffman Bros., Inc. v. Texas Co., 196 F.2d 695, at pp. 696–698 (1952), Judge Lindley speaking for the Court, said:

"We pointed out that the real question facing us, therefore, *was not whether the action was one to recover a statutory penalty within the meaning of any federal statute* but whether actions such as this are limited to a period of two years under the Illinois statutes * * *. The decisive factor is that Congress, by its failure to prescribe a limitation, has provided, by virtue of the Rules of Decision Act, 28 U.S.C.A. § 1652, that the applicable limitation must be determined by the state statute as interpreted by the courts of the state. We are not concerned at all, then, with anything other than the question of what statute of limitations of Illinois is applicable to actions to recover treble damages * * *.

"The word 'penal' is not one of definite specific meaning but has variable connotations depending upon the environment in which it is utilized. * * * It is to be observed that *Illinois has specifically refused to follow the limited definition of penalty or penal action or statutory penalty prescribed by Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123* * * *.

"Thus the crucial question of what Illinois statute of limitations applies must be answered as it was

in the Hoskins case. Illinois has decided that actions for treble damages \* \* \* so far partake of actions to recover statutory penalties as to be within the statute forbidding actions to recover such damages after two years.

"\* \* \* Congress has seen fit to leave the question to the state, and we know of no qualification upon this *grant of authority* implicit in the failure of Congress to provide **a** federal statute." (Italics supplied.)

In Grengs v. Twentieth Century Fox Film Corporation, 232 F.2d 325 (7th Cir.1956), Judge Schnackenberg, speaking for the Court in a movie treble-damage antitrust suit, concluded that the Wisconsin statute (W.S.A. 330.21(1)) providing for a two year statute of limitations for a statutory penalty was applicable rather than a six year provision on a statutory liability not otherwise provided for.

The Seventh Circuit is not alone in interpreting state statutes of limitation applicable to penal or forfeiture causes governing antitrust treble damage suits. The Third Circuit so held in Gordon v. Loew's, Inc., 247 F.2d 451 (1957), in passing on a New Jersey case. It also went on to point out that it was the variance in the holdings of applicability of the various state statutes of limitation that caused Congress to pass Section 4B. Judge Holder in Sandidge v. Rogers, D.C., 167 F.Supp. 553 (1958), also concluded that the Indiana statute of limitations pertaining to penal provisions was applicable (Burns' Ann.St. § 2–602). The Eighth Circuit in Powell v. St. Louis Dairy Company, 276 F.2d 464 (1960), concluded that under the Missouri law an action brought under the Clayton Act for treble damages is penal. The Skouras Theatres Corporation et al. v. Radio-Keith-Orpheum Corporation, 179 F.Supp. 163 (D.C.N.Y.1959), case, involving a New Jersey statute (N.J. S.A. 2A:14–10), held the statute of limitations applicable in penal causes controlling.

There are, however, several decisions in addition to those heretofore cited, which sustain a conclusion that the Federal treble damage antitrust cause of action is not deemed by Federal courts to be punitive in nature. Thus in Englander Motors, Inc. v. Ford Motor Company, 293 F.2d 802, at pp. 805–806 (6th Cir.1961), it was said (construing Ohio law):

"The weight of (state) authority is on the side of the *remedial* character of the action. \* \* \*

"It is clear to us that under federal law private actions for treble damages under the antitrust laws *are* not regarded as penal in nature, but as compensation. \* \* \*" (Italics supplied.)

In Thompson v. North Carolina Theatres, Inc., D.C., 176 F.Supp. 73 (1959), it was said:

"The majority view is that a private action for treble damages under the anti-trust laws is *not an action to recover a penalty* or forfeiture but rather is an action upon a liability created by statute and is in the nature of an action of tort. It is remedial and compensatory." (Italics supplied.)

In Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F.Supp. 15, at p. 29 (D.C.N.Y.1951), the Court held:

"An action for damages under Section 4 of the Clayton Act \* \* is *not one for a penalty*. The damages recoverable are, under federal law, compensatory in nature. \* \*

"Under federal law when a federal cause of action involves a fraud' the running of a federal statute of limitations is suspended until discovery of the fraud, despite the failure of the statute to contain such a qualifying provision. This equitable doctrine or mitigating construction is read into every federal statute of limitations. \* \* \*

" \* \* \* [E]ven a federal statute of limitations would be given

the mitigating construction required by that doctrine." (Italics supplied.)

In Reid v. Doubleday & Co., Inc. et al., 109 F.Supp. 354, an Ohio District Court held, in 1952:

"The majority (of Federal courts) have held that (a triple damage action) * * * was *not an action for a penalty* but rather for a liability created by statute. * * * It is our conclusion that under * * the Federal law the cause of action here sued upon is *remedial rather than penal* * * *." (Italics supplied.)

The New Jersey District Court in Florida Wholesale Drug, Inc. v. Ronson Art Metal Works, Inc., 110 F.Supp. 573 at p. 577 (1953), stated:

" * * * [T]he great weight of authority is to the effect that the treble damage provision of the Clayton Act *is* not penal * * *." (Italics supplied.)

The Kansas District Court in Fulton v. Loews, Inc. et al., 114 F.Supp. 676, at p. 680 (1953), stated:

"A majority of the federal courts construe the *Chattanooga* case as holding that a civil recovery under the Sherman and Clayton Acts *is remedial and compensatory and not penal.*" (Italics supplied.)

In Bertha Building Corporation v. National Theatres Corporation, 269 F.2d 785 (2d Cir. 1959), the Court of Appeals for the Second Circuit applied a state statute of limitations other than the one pertaining to penalties or forfeitures.

This construction of Section 4B as remedial rather than penal is supported by the fact of the Supreme Court's otherwise liberal rule of construction of treble damage causes and the antitrust acts, which would not obtain if the overall effect of the acts were penal. Thus it was said in Radovich v. National Football League et al., 352 U.S. 445 at p. 454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456 (1957):

"Congress itself has placed the private antitrust litigant in a most favorable position through the enactment of § 5 of the Clayton Act. * * * In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws."

In United States v. Cooper Corporation et al., 312 U.S. 600, at p. 605, 61 S. Ct. 742, at p. 744, 85 L.Ed. 1071 (1941), the Supreme Court in construing Section 7 of the Sherman Act, 15 U.S.C.A. § 15 note providing for treble damage cause of action, said:

"*Decision is not to be reached by a strict construction of the words of the Act,* nor by the application of artificial canons of construction. On the contrary, we are to read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction." (Italics supplied.)

Also pressed as supportive of a penal character of the instant statute are cited *qui tam* and false claims causes. Prominently asserted by defendants is the case of United States ex rel. Nitkey v. Dawes et al., 7 Cir., 151 F.2d 639, a *qui tam* civil action under the Informer's Act, 31 U.S.C.A. § 231 et seq., based on the theory that national bank's contract to assume and pay state bank's deposit liabilities was invalid under Illinois statute. The suit was instituted after the six year statute of limitations designated by the act had expired, but it was claimed the defendants concealed their alleged misconduct by failing to report certain liabilities in the required annual reports, and there was therefore a concealment each year which tolled the statute with respect to the original debt plus the accumulated interest thereon, and the penalties. The Court stated the section was "more than a mere statute of limitations. It is jurisdictional and strictly limits the power of the court to assume jurisdiction." The Court further cited the fact that 11 years had elapsed before the fil-

ing of the suit; that the Government had knowledge of the so-called concealed facts. It finally stated at p. 644:

> "We are dealing with a special statute relative only to qui tam actions, and it carries its own jurisdiction requirement that action be brought within six years. The language is plain and unambiguous and we think it should be strictly construed. It is not to be tolled or extended on account of fraud * * * for it involves jurisdiction of the subject matter, and that cannot be acquired even by consent, in opposition to the statute. * * *

> "Section 232 of the Act was amended * * * drastically limiting the conditions under which qui tam suits can be instituted and carried on."

In that case the suit was *instituted* by the United States, and the Government entered an appearance. 2 Bouv. Law Dict., Rawle's Third Revision, p. 2784 defines a *qui tam* action as one "under a statute which imposes a *penalty* * * * and gives that *penalty* in part to whomsoever will sue for the same * * *. The plaintiff describes himself as suing as well for the commonwealth * * *." (Italics supplied.) It is therefore evident that a *qui tam* action is in a class *sui generis*, and that the instant treble damage action has many differentiating factors such as purely on behalf of the private individual —the Government having its own specific remedies.

The relevancy of the ruling in United States v. Borin, 209 F.2d 145 (5th Cir. 1954), holding an action by the United States under the False Claims Act (31 U.S.C.A. § 231 et seq.) barred by the statute of limitations as being a claim penal in nature is not too apparent when it is realized the suit is by the *Government*, not by an individual for losses he sustained.

3. *Federal doctrine of Bailey v. Glover of tolling statute of limitations for fraudulent concealment.* In 1874 the United States Supreme Court held, in

Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636, there was a principle of equity which tolled a statute of limitations for fraud, which principle was equally applicable to causes of action at law. The Court stated at p. 349:

> "But we are of opinion * * * that the weight of judicial authority * * * is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."

There is the flat, unlimited statement in Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, that:

> *"This equitable doctrine is read into every federal statute of limitation."*

The Court additionally said in the Holmberg case at pp. 396–397, 66 S.Ct. at p. 584:

> " * * * [F]raudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.

> "Equity will not lend itself to such fraud and historically has been re-

lieved from it. It bars a defendant from setting up such a fraudulent defense, as it interposes against other forms of fraud. And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'
\* \* \*

"*This equitable doctrine is read into every federal statute of limitation.* If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16 [12 U.S.C.A. § 812], the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit. \* \* \* It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even *a federal statute in the same terms would be given the mitigating construction required by that doctrine.*" (Italics supplied.)

Now, many years after the enactment of the original act creating the right to treble damages, we have a federal statute of limitations enacted to achieve uniformity throughout the nation in such causes. One way of achieving such uniformity is for all courts to adopt the unitary *federal* construction of the nature of the cause of action, such as expounded in Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123; and Holmberg et al. v. Armbrecht et al., 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

Defendants negate the equitable principle because under Marshall v. Vicksburg, 15 Wall. 146, 149, 82 U.S. 146, 149, 21 L.Ed. 121 (1872), (two years before Bailey v. Glover, supra), equity never lends its aid to enforce a forfeiture or penalty. Since the Court has concluded that the Act is remedial this argument loses force.

The Court is impressed with the very pertinent decision of the Second Circuit Court of Appeals in Moviecolor Limited v. Eastman Kodak Company, 288 F.2d 80, at pp. 83–84 (2d Cir. 1961), which contains this oft-quoted language:

" \* \* \* We hold that the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act even when a state statute is used to measure the period \* \* \*.

" \* \* \* [A] federal court enforcing a federally created claim looks first to federal law to determine the nature of the claim \* \*.

"It seems far more likely that *Congress would have desired the federal suitor it was creating to have the benefit of the federal rule prolonging the period of suit during concealment by the wrongdoer.* This is particularly so when, as under the Clayton Act, enforcement of the right often serves not merely private but public ends." (Italics supplied.)

Defendants contend that a tolling of the statute of limitations for fraudulent concealment would vitiate the very purpose of the statute—an effective "firm," uniform time bar. They point out that the essence of a conspiracy in restraint of trade is concealment, citing, Grunewald v. United States, 353 U.S. 391, at pp. 401, 402, 77 S.Ct. 963, at p. 972, 1 L.Ed.2d 931 (1957), a criminal case, where the Court said:

" \* \* \* [A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence

showing merely that the conspiracy was kept a secret * * *. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases * * *."

Continuing at pages 405–406, at page 974 of 77 S.Ct., the Court said:

"We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces * * *.

" * * * But a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained * * *.

" * * * [N]o agreement to conceal the conspiracy after its accomplishment was shown or can be implied on the evidence before us to have been part of the conspiratorial agreement."

Defendants further cite the "explicit" and unambiguous language of the Act which "forever" bars a cause not brought within four years of its accrual, as precluding a court from reading into it an exception of tolling for fraudulent concealment.[7]

Additional stress is laid by defendants on the alleged fact that for the six years prior to the enactment of Section 4B in 1955 Congress was repeatedly urged to engraft such an exception, but "repeatedly and expressly" refused to engraft such an exception. Further they point out that plaintiffs would not lose all their claims for relief herein since a portion thereof are timely sued upon.

Some defendants also maintain that if the fraudulent concealment doctrine be read into Section 4B there will be recreated "the very confusion and chaos which Congress sought to eliminate." They contend that there will have to be a determination of what constitutes discovery of the causes of action. Further, there would have to be a jury determination as to what constitutes "due diligence" in uncovering the accrual of the cause of action.

They point out that since conspirators inevitably seek to cloak their activities in secrecy, tolling the statute during the concealment of a conspiracy means tolling the statute in every conspiracy case, yet Congress specifically intended to establish a fixed and uniform statute of limitations. They urge that any statute of limitations presupposes the barring of meritorious claims.

Defendants limit the Holmberg[8] doctrine to cases where fraud is the gravamen of the action, and as inapplicable to substantive legislation providing for punitive damages.

They maintain that the enactment of Section 4B in 1955 without a fraudulent concealment exception must be interpreted in the light of repeated Congressional rejection of such an exception during the preceding six years. Defendants reject plaintiffs' differentiation of the prior tendered exceptions as pertaining only to "discovery" tolling provisions as being simply the other side of the "coin" of fraudulent concealment exception doctrine, and Congress' earlier rejections of a discovery exception tolling the statute was tantamount to a rejection of a fraudulent concealment exception.

---

7. Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 64, 73 S.Ct. 580, 97 L.Ed. 821 (1953), wherein the Court differentiated the Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq. from the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Similarly, United States v. Borin, 209 F.2d 145 (5th Cir.1954) cert. den. 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (False Claims Act, 31 U.S.C.A. § 231 et seq.); United States ex rel. Nitkey v. Dawes, 151 F.2d 639 (7th Cir. 1945) cert. den. 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed. 1015; Adams v. Albany, 80 F.Supp. 876 (D.C.Cal.1948); Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

8. 327 U.S. 392, 396, 66 S.Ct. 582, 90 L. Ed. 743.

Defendants refute the existence of a long line of cases decided prior to the enactment of Section 4B as stating any affirmative concealment doctrine which Congress could be presumed to have adopted. They read the Holmberg v. Armbrecht (327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743) decision not as requiring a showing of definite and specific acts committed knowingly to conceal a wrong but involving a case "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part'" where "'the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" And Bailey v. Glover (21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636) holds concealment established when a fraud "is of such a character as to conceal itself."

They cite State of Oklahoma ex rel. Phillips, Governor of Oklahoma v. American Book Co. et al., 144 F.2d 585 (10th Cir. 1944), wherein it was held a claim was barred under the state statute, and it was not tolled by the nondiscovery of the claim, the claim not being one for fraud within the meaning of the state statute.

There have been several interesting law review comments on the applicability of the equitable doctrine of tolling for fraudulent concealment.

In a very recent article, "Antitrust Treble Damage Suits Against Electrical Manufacturers: The Statute of Limitations and Other Hurdles," appearing in 57 Northwestern University Law Review, pages 29–52, (by Grant W. Wiprud) it is said at page 50:

"Thus, in at least three circuits (the Second, Fifth, and Ninth) *it has been recognized at the appellate level that fraudulent concealment of a cause of action for treble damages under the anti-trust laws operates to toll the statute of limitations,* and that the suspension of the period of limitations continues as long as the concealment continues."

In a note in an Annotation, "Equitable estoppel as precluding reliance on statute of limitations" appearing in 3 L.Ed. 1886, it is said at p. 1887:

"It is obvious that *federal law governs the question whether and in what circumstances the doctrine of equitable estoppel may be invoked against pleading a federal statute of limitations in an action based on a federal right * * *.* The doctrine of equitable estoppel is applicable to bar inequitable reliance on a statute of limitations."

In a 1933 law review article (Fraudulent Concealment and Statute of Limitation, John P. Dawson, 31 Mich. Law Review, at pages 875 and 918, it was said:

"In a recent article the writer has discussed a common exception to statutes of limitation—the exception for claims based on undiscovered 'fraud.' It was there pointed out how useful this exception has been made through the *wide definition of 'fraud' that is now fully established.* By judicial decision 'fraud' has been extended far beyond the field of misrepresentation of fact into the twilight zones of 'constructive fraud' and out toward the open spaces of naked tort * * *."

"The 'fraudulent concealment' exception has been used over a very wide field to relax statutory rules for the limitation of actions * * *."

In a 1950 article in 63 Harvard Law Review, on Developments in the Law, it was said at pp. 1220 and 1235:

"*When the defendant fraudulently conceals from the plaintiff the existence of a cause of action, postponement of the limitations period is as equitable as in the fraud exception,* for the only difference is that the wrong in this case, although concealed, exists independently of the fraud * * *. Indeed, acts of fraudulent concealment might often be regarded as constituting a fraud

depriving the plaintiff of his cause of action * * *."

"Where the substantive time limit is one created by the federal government, to disregard the state exceptions may be justified by the desire for a maximum degree of uniformity in the enforcement of federal rights. * * * But the federal courts have been willing to invoke the exceptions which have been traditionally implied by the judiciary, and which therefore do not depend upon diverse state statutes * * *."

In 75 Harvard Law Review, at p. 627, (a case comment on Moviecolor) it was stated:

" * * * [I]n the recently enacted federal statute that now governs in Clayton Act suits, for example, the specified period is four years, and *of course, concealment applies*."

Many decisions have expatiated on the concept of fraudulent concealment reaching the conclusion it encompasses an active conduct on the part of the perpetrator.[9] There is an exhaustive annotation in 173 A.L.R. 576, on "What constitutes concealment which will prevent running of statute of limitations." It is there said at pp. 578 and 585:

"According to the majority rule, however, fraudulent concealment of a cause of action from the one in whom it resides by the one against whom it lies constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action.

" * * * This rule finds application most frequently in actions based upon fraud or in which fraud is the gist of the action, but *it is by no means restricted to actions of that character*. The rule applies regardless of the nature of the cause, if the requisite element of fraudulent concealment of the cause of action is present and it applies in actions at law as well as in suits in equity."

"The rule is quite generally accepted, particularly in modern cases, that, in the absence of a fiduciary or other trust or confidential relationship between the parties, *an affirmative act on the part of the defendant tending toward concealment is necessary, and that passivity, such as silence on his part, is not sufficient, in order to constitute such a concealment as to toll the statute of limitations*, at least where the basis of the action was not fraud and the silence a continuation of the original fraud."

Another pertinent annotation is that on the "Effect of fraud to toll the period for bringing action prescribed in statute creating the right of action" appearing in 15 A.L.R.2d 500, wherein the writer concluded "there is a definite conflict of authority" as to the "question of whether a statute which creates a right or cause of action and also imposes a limitation of time within which proceedings for its enforcement may be commenced admits of an implied exception whereby the limitation period may be tolled or suspended in case fraud is shown to have prevented timely commencement." He decides that

"The basic question is whether, in the creation of a right which may be an extremely valuable one and far more vital to the beneficiary than many of those previously existing, by comparison, the lawmaking body *meant to attach a condition to* its

---

9. Felix v. Patrick, 145 U.S. 317, 331, 12 S.Ct. 862, 36 L.Ed. 719 (1892); Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 23 L.Ed. 699 (1875); Files v. Rankin, 153 F. 537 (8th Cir.1907); Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir.1936); Schram v. Burt, 111 F. 2d 557 (6th Cir.1940); Hickok Producing & Development Co. v. Texas Co., 128 F.2d 183 (5th Cir.1942); Arkansas Natural Gas Co. v. Sartor, 78 F.2d 924 (5th Cir.1935); Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954 (D.C.Ill.1952).

enforcement which must be construed as absolute under all circumstances, in the absence of an express exception."

He further states:

"In certain cases of a more or less general nature wherein statutes creating a cause of action not theretofore existing were construed with reference to the effect of fraud or fraudulent concealment calculated to prevent commencement of enforcement proceedings within a time limited in the statute therefor, courts have felt compelled to hold, in accordance with apparently well-settled construction, that enforcement was conditioned upon commencement within the prescribed period and that the latter could not be tolled or suspended for any reason not expressly excepted by the statute * * *.

"In certain other cases of a general nature, however, courts have expressed a dissatisfaction with the logical basis of the construction previously described, and have, by ruling or legitimate inference, either rejected it or construed particular statutory provisions creating a right of action as entirely inconsistent with the proposition that a limitation prescribed thereby was intended to operate as an absolute condition, preventing tolling or suspension in the event that fraud or fraudulent concealment should be shown to have prevented a timely commencement of enforcement proceedings."

Defendants differentiate the case of Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed. 2d 770 (1959), as inapplicable, the right under Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) being not a statute creating substantive rights, but simply codifying procedural common law rights. They cite many cases of more recent times supporting a distinction between substantive and procedural statutes of limitation.

However, the Supreme Court uses language in the Glus opinion which would indicate a Federal attitude generally applied on the concept of fraudulent concealment. It said at p. 232, 79 S.Ct. at p. 762:

"To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. *Deeply rooted in our jurisprudence this principle* has been applied in many diverse classes of cases *by both law* and equity courts and has frequently been employed *to bar inequitable reliance on statutes of limitations.*" (Italics supplied.)

The Court concludes that difficult as its conclusion may render the discovery process of this litigation, it must deny the defendants' motion in Part II, to strike the allegations antedating the designated statutory period and the allegations of fraudulent concealment. It is of the opinion that it was the Congressional intent to incorporate in Section 4B the well-established Federal doctrine that there is read into every federal statute of limitation the equitable doctrine of tolling of the statute for fraudulent concealment. This was indicated by the verbal exchange between the proponent of the legislation before its passage and another Representative. Such an interpretation has been reached in the many decisions hereinbefore quoted from at length. Implicit in these conclusions is the belief that Congress did not intend that co-conspirators could spin and weave an impenetrable shroud of fraudulent concealment to cloak their illegal acts and then fraudulently render themselves immune with the shield of the statute of limitations to bar redress by those who are the victims of their conspiratorial machinations. The treble-damage provision should be considered in Federal law as compensatory rather than punitive and therefore not strictly construed. Cases to the contrary were construing state statute of limitations of varying phraseology. The Supreme Court has in other respects indicated that these anti-

trust acts are to be given broad construction.

This Court realizes the importance of this aspect of the litigation and the contrariety of judicial views and would welcome and recommends an immediate review of this determination on appeal.

The motion to strike contained in Part II of the Defendants' Motion dated February 1, 1962, is denied.