## BAYSOY v. JESSOP STEEL CO.

Civ. No. 7963.

United States District Court
W.D. Pennsylvania.

May 5, 1950.

304

Charles M. Walker (of Peaslee & Turlington), Washington, D. C., Anne X. Alpern, Pittsburgh, Pa., for plaintiff.

Emory R. Kyle, Rex Rowland (of Smith, Buchanan & Ingersoll), Pittsburgh, Pa., for defendant.

FOLLMER, District Judge.

In this action plaintiff, a citizen of Turkey doing business in Washington, D. C., seeks to recover damages for breach of an alleged contract whereby defendant, a Pennsylvania corporation having its principal place of business at Washington, Pa., agreed to sell to the plaintiff one hundred metric tons of "ferrochrome," having a seventy-four per cent. minimum and seventy-five per cent. maximum content of chromium, for the sum of $35,610.75.

A copy of the alleged written contract is attached to the complaint as an exhibit and from which it appears that the defendant (named therein "Seller") agreed to deliver the material to plaintiff (named therein "Buyer") in New York within fifteen days after receipt of a confirmed irrevocable letter of credit for the amount of the purchase price of $35,610.75. Delivery was to be made "F. A. S. New York or at warehouse in New York City, which ever the buyer will select." The contract furthermore carried this clause, "The seller agrees, after transaction is completed, to pay two per-cent (2%) on Thirty Five Thousand Six Hundred Ten dollars and Seventy Five cents ($35,610.75) the amount of Seven Hundred Twelve dollars and twenty two cents ($712.22) as commission to buyer."

The matter now before the Court is defendant's motion to dismiss on the ground the complaint fails to state a claim upon which relief can be granted because the contract upon which the complaint is predicated is in violation of Section 2(c) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c). Plaintiff contends that the Clayton Act, amended as aforesaid, has no application to sales for export and that the specific exceptions contained in the Act remove this contract of sale from its prohibitions.

Section 2(c) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c), provides: "(c) It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

In Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 106 F.2d 667, 676, the court analyzed Section 1 of the Robinson-Patman Act, 15 U.S.C.A. § 13 as follows: "* * * Paragraph (a) deals with the selection of customers and

provides that it shall be unlawful to discriminate in price between them. Then follow the cost differential provisos upon which the petitioner relies. Paragraph (b) provides that the burden of rebutting a prima facie case of discrimination rests upon the person charged with a violation of the Section. Paragraph (c) prohibits the payment or acceptance of commission or brokerage or other compensation, except for services rendered, as we have indicated. Paragraph (d) provides that it shall be unlawful to pay or contract for the payment of anything of value for services or facilities unless such payment or consideration is available on proportionally equal terms to all other customers competing in distribution of such products or commodities. Paragraph (e) prohibits the furnishing of services or facilities for processing or handling upon terms not accorded to all purchasers on proportionally equal terms. Paragraph (f) prohibits persons from knowingly receiving a discrimination in price prohibited by Section 13."

█ Although it is not clear to my mind that the alleged contract may be said to contemplate an export sale, assuming that it does, the contention of plaintiff that Section 2(c) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c), does not apply to sales for export is completely erroneous.

Section 1 of the Clayton Act, Oct. 15, 1914, c. 323, § 1, 38 Stat. 730, 15 U.S.C.A. § 12, defines "commerce" as follows: " 'Commerce,' as used (herein), means trade or commerce among the several States and with foreign nations, or between the District of Columbia or any Territory of the United States and any State, Territory, or foreign nation, or between any insular possessions or other places under the jurisdiction of the United States, or between any such possession or place and any State or Territory of the United States or the District of Columbia or any Territory or any insular possession, or other place under the jurisdiction of the United States: Provided, That nothing in [this Act] contained shall apply to the Philippine Islands."

Congressman Patman, co-author of the amending Act, in his book entitled "The Robinson-Patman Act," Chapter 19, Page 208, under the heading "Import and Export Sales," says: "The Robinson-Patman Act is divided into two distinct classifications in its application to export and import sales." He then quotes Section 2(a) of the Act, italicizing the last phrase of the paragraph, to wit: *"where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States."*; and referring to the words italicized, he states:

"The italics above distinctly delimit the application of the price-discrimination provisions of the Act to sales for use, consumption, or resale within the confines of any place under the jurisdiction of the United States. If that were not the intent, then the inclusion of this clause in the Act represents just a waste of good words. That it is purposely made a part of the Act is clear when we inspect the definition of 'commerce' found in the Clayton Act, of which the Robinson-Patman Act is a part. That definition is broadened to include the phrase 'and with foreign nations.'

"Therefore, in applying the Act to export sales, it is evident that no limit or regulation of price discrimination in such sales is intended, unless goods involved in such transactions are resold for use, consumption, or resale in any place under the jurisdiction of the United States. It is likewise apparent that the parties to any sales transaction, regardless of where the parties are located, are not subject to the price-discrimination provisions of the Act, unless such goods are sold for resale in, or are to be used or consumed in, any place under the jurisdiction of the United States.

*"This delimitation is not found in the remaining clauses of the Act, which apply to payment for the use of services and facilities used in furthering the movement of the goods involved in the sales transaction.* (Emphasis supplied.) These clauses apply to any person *engaged in commerce,* who in the course of such commerce enters into actions prohibited by the clauses. To determine the limit and

scope of such commerce we must turn to the definition found in the Clayton Act itself. * * * "

Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a), first of all makes it unlawful for any person "to discriminate in price between different purchasers of commodities of like grade and quality" where the result is to lessen competition or to tend to create a monopoly.[1] Speaking with reference to sub-paragraph (a) of the amending Act, the majority opinion in the Bruce's case, supra, said: "Moreover, no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination." But in Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 150 F.2d 607, 609, the court said: " * * * price discrimination, which is covered by section 2(a) of the Act, 15 U.S.C.A. § 13 (a), is not necessary to a violation of section 2(c), quoted above, which specifically forbids the payment of brokerage by the seller to the buyer or the buyer's agent." Later in the same opinion (Southgate) the court quoted from its earlier opinion in Oliver Bros. v. Federal Trade Commission, 4 Cir., 102 F.2d 763, 767, in reference to the Robinson-Patman Act as follows: " * * * three specific matters were forbidden as unfair trade practices by subsections (c), (d) and (e), viz.: the granting of commission or brokerage, or any allowance in lieu thereof, to the other party to the transaction or his agent, the making of discriminatory payments by seller to buyer for services rendered by the latter and discrimination by the seller in the rendering of services to the buyer. It is perfectly clear that all three of these practices were forbidden because of their tendency to lessen competition and create monopoly, without regard to their effect in a particular case; *and there is no reason to read into the sections forbidding them the limitations contained in section 2(a) having relation to price discrimination,* * * *." (Emphasis supplied.)

Plaintiff is equally in error in his second contention that the specific exceptions contained in the Act remove this contract of sale from its prohibitions. Basing his claim on the phrase in Section 2(c) "except for services rendered in connection with the sale or purchase of goods, wares, or merchandise," he argues, "Under the express provision of Section 13(c), a buyer who renders services to the seller could procure commissions without conflicting with the provisions of this amendment."

The "services" rendered by plaintiff which he claims justify the two per cent. commission are laboratory analyses, the procuring of letters of credit and export licenses. The alleged contract clearly indicates that the seller was to furnish chemical analyses by the Pittsburgh Testing Laboratory and the buyer was to pay for a further analyses by United States Naval Metallurgical Research Laboratories, subsequent to the seller's own Pittsburgh analyses. Buyer was also obligated to establish his credit for the payment of the purchase price and to secure import and export licenses. Clearly all of the services relate solely to the buyer, the additional chemical analyses as a check on that furnished by seller certainly as a security measure for buyer, the ordinary normal steps taken by any individual to establish a line of credit with a loaning agency, and finally, the expense incurred by a domestic purchaser to enable him to make a resale of the goods abroad.

Here again the comment of the court in Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 150 F.2d 607, 610, is particularly apropos,—"We are not impressed with the argument that the company renders services to those from whom it purchases, within the meaning of the exception to subsection (c) quoted above. The services which the company proposes to show by the evidence that was excluded are services rendered to itself, as purchaser, owner and subsequent seller of the goods purchased, and not to those from whom it has purchased them. It is immaterial that

---

1. Bruce's Juices v. American Can Co., 330 U.S. 743, page 758, 67 S.Ct. 1015, 1021, 91 L. Ed. 1219, Justice Murphy's dissent.

those persons are benefited by the fact that the company purchases from them the goods which it subsequently resells. The crucial fact is that all of the services upon which it relies are services rendered in connection with its own purchase, ownership or resale of the goods; and these services it renders, not to those from whom the goods are purchased, but to itself. * * *"

That, in my judgment, is the precise situation here.

Defendant's motion to dismiss the complaint is granted.