**Paul Eugene TESSIER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5424.**

United States Court of Appeals
First Circuit.

July 31, 1959.

David W. Walsh, Boston, Mass., with whom Arthur D. Healey, Boston, Mass., was on brief, for appellant.

John G. Laughlin, Atty., Dept. of Justice, Washington, D. C., with whom George Cochran Doub, Asst. Atty. Gen., Anthony Julian, U. S. Atty., Boston, Mass., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Circuit Judge (Retired).

This is unquestionably a sad case, in which the United States is using the statute of limitations to defeat a meritorious claim. Appellant brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., and offered to prove the following facts:

Exercising his rights as an honorably discharged veteran of World War II, Tessier entered the Veterans' Administration Hospital in Togus, Maine, for an appendectomy performed there on June 7, 1947. He had undergone no prior abdominal or other major surgery. Appellant was released from the hospital on June 18, 1947. Sometime in 1948 he began experiencing sporadic sharp pain in his right side in the vicinity of his diaphragm, which became fairly constant by 1950.

Appellant was hospitalized at the Lowry Air Force Base hospital, Denver, Colorado, on complaint of this pain (1) from June 28 to July 30, 1951, (2) from February 18 to May 9, 1952, (3) from July 3 to July 10, 1952, (4) from April 15 to April 21, 1953, and (5) from April 27 to June 19, 1953. Tentative and final diagnoses of his illness during these five confinements included acute pleurisy, chronic pleurisy, hemorrhage of duodenal ulcer, duodenal ulcer without bleeding, liver abscess, other abscess, and finally (by a psychiatrist) physical manifestations of emotional problems centered around hostility. A major gastrointestinal exploratory operation, at least fourteen series of X-rays, and at least one fluoroscopy were performed; the results of all were reported as negative, although eight series of X-rays (the only ones which covered the area in question) portray at least one metal fragment and the fluoroscopy and at least one series of X-rays show elevation of the right side of the diaphragm.

In addition, appellant proved to the satisfaction of the district court that, complaining of intense similar pain, he returned on February 22, 1954, to the Togus hospital where his appendix had been removed, and that he there underwent a great variety of tests and medication, including further X-ray and fluoroscopic examinations. Eventually, on March 31, 1954, the presence of two metallic needle fragments lying between appellant's diaphragm and his liver was discovered, and an exploration thus prompted revealed a subdiaphragmatic abscess. Appellant was finally discharged on May 20, 1954.

The district court found that the needle fragments as portrayed on a single X-ray plate "might well not be observed because they look exactly like artifacts, thin white lines which are a common X-ray anomaly, and even on a series of plates they could be overlooked." 164 F.Supp. 779, 780. And it also found "evidence that because of its lack of objective characteristics the diagnosis of a subdiaphragmatic abscess normally consumes several weeks." Such an abscess "is quite uncommon. Also, it is not usual to associate it with foreign bodies."

The court, considering the 1954 hospitalization alone, found negligence in the failure of the Togus hospital person-

nel to discover the needle fragments by March 12, 1954, and thus find the abscess 19 days earlier than they did. The United States was held liable for $650 in damages, less $100 veterans' disability benefits received, from which judgment it has not appealed.

The plaintiff-appellant contends that the district court erred in several orders by which it ruled that the two-year statute of limitations for tort claims against the government, 28 U.S.C. § 2401(b), limits appellant to recovery for negligent conduct occurring within two years before the complaint was filed.

The appellant's original complaint was filed November 30, 1955. It contained jurisdictional and damage allegations, set forth the appendectomy, and alleged:

"6. * * * In the course of this operation, the defendant, through its agents, servants or employees, used medical instruments and equipment in and about the body of the Plaintiff, whereupon, as a result of the negligence, wrongful act or omission of the Defendant, its officers, agents, servants and employees, acting within the course and scope of their employment, did cause, permit or place a piece or pieces of metal from a medical instrument or article of equipment in the Plaintiff's body and therein allow [such metal] to remain after the completion of said operation.

"7. As a result of the negligence, wrongful act or omission referred to in the preceding paragraph, the Plaintiff was obliged to undergo further treatment and was confined to various hospitals from June of 1947 until his most recent confinement which occurred at the Veterans Administration Hospital at Togus, Maine, from February 22, 1954 to May 20, 1954, at which time the above facts became known to the Plaintiff."

The United States moved to dismiss, citing the statute of limitations, and the appellant countered with a memorandum suggesting three theories, which it still urges: (1) The statute did not begin to run until March 31, 1954, when the presence of the needle fragments became known to appellant. (2) The tortious insertion of the needle fragments gave rise to a duty to remove them, the failure to comply with which constituted continuing negligence. (3) The defendant's agents fraudulently concealed the presence of the needle fragments.

The district court ruled (obviously correctly) that the second theory was not comprehended by the complaint, so appellant moved on May 9, 1957, for leave to file an amended complaint, which specifically alleges tortious conduct during the interim hospitalizations and continuing negligence throughout the period June 7, 1947, to May 20, 1954. Leave was granted on June 4, 1957, the court expressly ordering, as explained in an opinion of October 30, 1957, that the amended complaint would not relate back under F.R.Civ.P. rule 15(c), 28 U.S.C. in so far as it pleaded continuing negligence. The court then ordered that the case stand for trial as to "any separate act of misfeasance or negligent non-feasance occurring on and after February 22, 1954, a date set forth in the original complaint", D.C., 156 F.Supp. 32, at page 34, cf. Brassard v. Boston & Maine R. R., 1 Cir., 1957, 240 F.2d 138 and allowed motions to strike which pared the amended complaint to reflect this ruling. It was on this theory that the case was tried and appellant recovered his judgment.

Harsh as the result to the appellant may seem, there can be no doubt that the district court's ruling on the relation back of the amended complaint was correct. Until the amendment, the complaint did not even suggest that recovery was claimed for negligence occurring during the period 1947 to 1954, and the amendment was filed more than two years after the end of that period. It follows that no cause of action for continuing negligence was properly before the district court. Nor can we find any support in the complaint, the offer of proof, or the amended complaint, for the

theory of fraudulent concealment, even if we assume that such fraud would toll the statute. Cf. Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770; Scarborough v. Atlantic Coast Line R. R. Co., 4 Cir., 1949, 178 F.2d 253, 15 A.L.R.2d 491. The district court was justified in assuming, in denying the motion to dismiss, that no such issue was in the case. 156 F.Supp. at page 33.

We therefore have before us on this appeal only the questions (1) whether a cause of action "accrues" under 28 U.S. C. § 2401(b) despite the injured person's ignorance of the cause of his misery, and (2) whether such "continuing" treatment as was present in this case (which we will assume to have been negligent) tolls 28 U.S.C. § 2401(b) and preserves a right to sue on the original tort.

Appellant claims that the federal rule should be that a "claim accrues" only when the prospective plaintiff knows all the facts on which his action will be based. He relies in this respect on Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, and Reid v. United States, 5 Cir., 1955, 224 F.2d 102. Both of these cases, however, were concerned with unusual circumstances that prevented an accurate determination, even in retrospect, of when the harm to the plaintiff (without which the negligence was not actionable) actually happened. See Pillsbury v. United Engineering Co., 1952, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225; Brassard v. Boston & Maine R. R., supra, 240 F.2d 138. Appellant's injury —the introduction and abandonment of the needle fragments—certainly occurred (if his allegations are accepted) on June 7, 1947; it is irrelevant that the resulting harm became great only subsequently.

■ Moreover, the assumption that a federal rule is decisive is unsound. Of course the meaning of the statutory phrase "claim accrues" is a federal question; but it is too clear for argument that a "claim accrues" when it may be made the basis of a judicial action. The Urie case involved not only an interpretation of the relevant statute of limitations but also a federal law decision of when the claim became actionable, because that case arose under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which creates a substantive federal right of action. In contrast, the appellant here sued under the Tort Claims Act, where Congress merely waived the sovereign immunity of the government as a defense to litigation enforcing state-created substantive rights. The statute provides simply that "[t]he United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus a "claim accrues" when a private person similarly situated would become suable under the law of the state. Bizer v. United States, D.C.N.D.Cal.1954, 124 F.Supp. 949; cf. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; Rushford v. United States, D.C.N.D.N.Y. 1950, 92 F.Supp. 874, affirmed 2 Cir., 1953, 204 F.2d 831. Recognizing this fact, on the second appeal of the Reid case, supra, United States v. Reid, 5 Cir., 1958, 251 F.2d 691, the court did not apply the Urie rule that the action accrued only when the plaintiff knew he had been injured, but rather, following Georgia law, sought the time when, unknown to either party, harm had in fact occurred and there was thus a complete legal wrong.

■ The tort alleged by appellant Tessier took place in Maine. It seems clear that the law of that state gave him a right of action as soon as the metal fragments were abandoned in him. There was a legal wrong on June 7, 1947, and suit thereon was not suspended because of any duty imposed on the United States to remove the fragments. See Jones v. Grand Trunk Railway Co., 1882, 74 Me. 356; Perkins v. Maine Central R. R. Co., 1881, 72 Me. 95. See also Wilcox v. Plummer, 1830, 4 Pet. 172, 29 U.S. 172, 7 L.Ed. 821. Hence his claim accrued within the meaning of 28 U.S.C. § 2401 (b) in 1947.

■ Appellant's second contention, that the further negligence of federal employees tolled the statute, depends on the construction of 28 U.S.C. § 2401(b) as a matter of federal law. Young v. United States, 1950, 87 U.S.App.D.C. 145, 184 F.2d 587, 21 A.L.R.2d 1458; Maryland, to Use of Burkhardt v. United States, 4 Cir., 1947, 165 F.2d 869, 1 A.L.R.2d 213; United States v. Westfall, 9 Cir., 1952, 197 F.2d 765. It has been held that this statute is not tolled during disabilities such as minority, Simon v. United States, 5 Cir., 1957, 244 F.2d 703; United States v. Glenn, 9 Cir., 1956, 231 F.2d 884, or nonappointment of an administrator to bring a wrongful death action, Foote v. Public Housing Com'r, D.C.W.D.Mich.1952, 107 F.Supp. 270, and it probably would not be tolled by the intervention of hostilities, cf. Soriano v. United States, 1957, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306.

Many cases have been cited by the parties but few are really in point. If the alleged negligence were in misdiagnosis or mistreatment, as in Shives v. Chamberlain, 1942, 168 Or. 676, 126 P.2d 28; Williams v. Elias, 1941, 140 Neb. 656, 1 N.W.2d 121; Peteler v. Robison, 1932, 81 Utah 535, 17 P.2d 244; Hotelling v. Walther, 1942, 169 Or. 559, 130 P.2d 944, 144 A.L.R. 205; Schmit v. Esser, 1931, 183 Minn. 354, 236 N.W. 622, 74 A.L.R. 1312, the doctor might not be chargeable with a wrong until the course of treatment was over.* That was the theory of the present appellant's amendment, but it is not before us. We cannot adopt a rationale based on contract in this action under the Tort Claims Act, compare Bowers v. Santee, 1919, 99 Ohio St. 361, 124 N.E. 238; Conklin v. Draper, 1930, 229 App.Div. 227, 241 N.Y.S. 529, nor can the appellant simply be said to have known at the time of the appendectomy that he was hurt, as did his counterparts in Gangloff v. Apfelbach, 1943, 319 Ill.App. 596, 49 N.E.2d 795, and Deer v. New York Central R. R. Co., 7 Cir., 1953, 202 F.2d 625.

■ In cases like the one at bar where a doctor has, at the end of an operation, left in the plaintiff's body a needle, sponge, piece of tooth root, drill, skin clip, or even forceps, the majority of jurisdictions hold that the statute of limitations is not tolled during continuing negligent post-operative treatment by the doctor. Capucci v. Barone, 1929, 266 Mass. 578, 165 N.E. 653; Bernath v. Le Fever, 1937, 325 Pa. 43, 189 A. 342; Silvertooth v. Shallenberger, 1934, 49 Ga. App. 133, 174 S.E. 365; Becker v. Porter, 1925, 119 Kan. 626, 240 P. 584. See also Albert v. Sherman, 1934, 167 Tenn. 133, 67 S.W.2d 140; Carrell v. Denton, 1942, 138 Tex. 145, 157 S.W.2d 878; Conklin v. Draper, supra, 229 App.Div. 227, 241 N.Y.S. 529, affirmed without opinion, 1930, 254 N.Y. 620, 173 N.E. 892; Pickett v. Aglinsky, 4 Cir., 1940, 110 F.2d 628 (W.Va. law). Contra, Thatcher v. De Tar, 1943, 351 Mo. 603, 173 S.W.2d 760; Perrin v. Rodriguez, La.App.1934, 153 So. 555; Trombley v. Kolts, 1938, 29 Cal.App.2d 699, 85 P.2d 541.

It is argued on one hand that the statute of limitations expresses a policy of repose and should be interpreted accordingly. Undeniably the legislature intends to strike down all stale claims, meritorious as well as frivolous. On the other hand, it is said that a person has in effect no remedy if his claim is barred before he knows that he has been wronged, and that such a person cannot be accused of sleeping on his rights. This court can not resolve this policy conflict. In the present state of the law we cannot possibly say, contrary to the plain mandate of 28 U.S.C. § 2401(b), that Congress intended that the statute be suspended until the plaintiff knows of the wrong; and we cannot remold the statute in the image of the equitable doctrine of laches. Soriano v. United States, supra, 352 U.S. 270, 77 S.Ct. 269.

Furthermore, the appellant's pleading and offer of proof fall somewhat short of alleging that appellant's health was solely

---

* The distinction is pointed out in the last three cases cited.

in the care of employees of the United States from June, 1947, through May, 1954. We have also assumed, without deciding, that this doctrine tolling the statute during continuing negligent treatment would be applied to the United States—or a comparable private principal—through some kind of merger of vicarious responsibilities, even though the operation and continued treatment were not by the same doctor or his agents, or even in the same hospital, but were by distinct agencies of the government and were widely separated geographically. Cf. United States v. Hull, 1 Cir., 1952, 195 F.2d 64.

It is abundantly clear that the district court erred, if at all, in favor of the appellant.

A judgment will be entered affirming the judgment of the District Court.