ATLANTIC CITY ELECTRIC COMPA-
NY et al., Plaintiffs-Appellees,

v.

GENERAL ELECTRIC COMPANY
et al., Defendants-Appellants.

No. 208, Docket 27884.

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1962.

Decided Dec. 31, 1962.

Leonard P. Moore, Circuit Judge, dissented.

Milton Handler, New York City (Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for plaintiffs-appellees Atlantic City Elec. Co., Appalachian Power Co., Ohio Valley Elec. Corp. and others.

Edward F. Huber, New York City, (Naylon, Foster, Dean & Aronson, New York City, on the brief), for plaintiffs-appellees New York State Elec. & Gas Corp., Rochester Gas and Elec. Corp., and the Patchogue Elec. Light Co.

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City on the brief, for plaintiffs-appellees Atlantic City Elec. Co. and others.

Arthur G. Coffey, Gerald Powers, Ralph Warren Sullivan, Boston, Mass., Robert W. Gelfman, New York City, Harold E. Kohn, Philadelphia, Pa., on the brief, for plaintiff-appellee City of Boston.

Sidney Goldstein, Nathaniel Fensterstock, Milton H. Pachter, New York City, on the brief, for plaintiff-appellee The Port of New York Authority.

Leo A. Larkin, Morgan N. Lipton, New York City, on the brief, for plaintiffs-appellees City of New York and others.

Le Boeuf, Lamb & Leiby, New York City, on the brief, for plaintiffs-appellees Arkansas Power & Light Co. and others, Consolidated Edison Co. of New York, Inc., Niagara Mohawk Power Corp., Orange and Rockland Utilities, Inc.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, Mathias Lloyd Spiegel, Sp. Asst. Atty. Gen., New York City, on the brief, for plaintiffs-appellees People of the State of New York and New York State Thruway Authority.

Thomas F. Moore, Jr., New York City, on the brief, for plaintiff-appellee Power Authority of the State of New York.

Reid & Priest, Coudert Brothers, New York City, on the brief, for plaintiffs-appellees Dallas Power & Light Co. and Carolina Power & Light Co. and others.

John O. Tessier, Freeport, N. Y., on the brief, for plaintiff-appellee Village of Freeport.

Winthrop, Stimson, Putnam & Roberts, New York City, on the brief, for plaintiffs-appellees Consumers Power Co. and others.

Joseph W. Burns, New York City (Cyrus Austin, John P. Cuddahy, Austin, Burns, Appell & Smith, New York City, on the brief), for defendant-appellant Ingersoll-Rand Co.

Edgar E. Barton, New York City (MacDonald Flinn, White & Case, New York City, on the brief), for defendant-appellant General Elec. Co.

Harold F. McGuire, Harry H. Weil, New York City (Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, on the brief), for defendants-appellants C. H. Wheeler Mfg. Co., The Clark Controller Co., Lapp Insulator Co., Inc., McGraw-Edison Co., Ohio Brass Co. and General Elec. Co.

Albert R. Connelly, New York City, (Victor M. Earle, III, Robert S. Rifkind, Cravath, Swaine & Moore, New York City, on the brief, for Westinghouse Elec. Corp. and Haight, Gardner Poor & Havens, on the brief), for defendant-appellant I-T-E Circuit Breaker Co.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, on the brief, for defendant-appellant A. B. Chance Co.

Hughes, Hubbard, Blair & Reed, New York City, on the brief, for defendant-appellant Allen-Bradley Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, on the brief, for defendants-appellants Allis-Chalmers Mfg. Co. and Carrier Corp.

Richard Owen, New York City, on the brief, for defendant Cole Elec. Products Co.

Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief, for defendants-appellants Cornell-Dubilier Elec. Corp. and Federal Pacific Elec. Co.

Kissam & Halpin, New York City, on the brief, for defendant-appellant Cutler-Hammer, Inc.

Meyer, Kissel, Matz & Seward, New York City, on the brief, for defendant-appellant Foster-Wheeler Corp.

Alexander & Green, New York City, on the brief, for defendants-appellants H. K. Porter Co. Inc., Wadsworth Electric Mfg. Co., Inc. and Zinsco Elec. Products Inc.

Satterlee, Warfield & Stephens, New York City, on the brief for defendant-appellant Hubbard and Co.

Stickles, Hayden, Young, Kennedy & Hort, New York City, on the brief for defendants-appellants Joslyn Mfg. & Supply Co., and The Porcelain Insulator Corp.

Casey, Lane & Mittendorf, New York City, on the brief for defendant-appellant Kuhlman Elec. Co.

Cleary, Gottlieb & Steen, New York City on the brief for defendants-appellants Moloney Elec. Co., Sangamo Elec. Co., and Wagner Elec. Co.

Kupfer, Silberfeld, Nathan & Danziger, New York City, on the brief for defendant-appellant Norbute Corp.

Laporte & Meyers, New York City, on the brief for defendant-appellant Schwager-Wood Corp.

Clark, Carr & Ellis, New York City, on the brief for defendant-appellant Southern States, Inc.

Allan D. Emil, New York City, on the brief for defendant-appellant Square D Co.

Close, Griffiths, McCarthy & Gaynor, New York City, for defendant Ward Leonard Elec. Co.

Gallop, Climenko & Gould, New York City, on the brief for defendant-appellant Worthington Corp.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

The question for decision is whether fraudulent concealment of the existence of a cause of action under § 4 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C. § 15, tolls the running of the four-year limitation period contained in §§ 4B and 5(b) of the Act, as amended by Act of July 7, 1955, 69 Stat. 282, 15 U.S.C. §§ 15b and 16(b). We hold that it does and accordingly we affirm Judge Feinberg's order, 207 F.Supp. 613 (1962), denying motions of the defendants in 418 related actions pending in the Southern District of New York to strike from the complaints (1) allegations relating to damages sustained prior to the statutory limitation period, and (2) allegations relating to the fraudulent concealment of the conspiracies of the defendants involved in each case.[1]

Judge Feinberg, in denying the defendants' motions, certified that he was of the opinion that a controlling question of law was involved as to which there was substantial ground for difference of opinion, and that immediate appeal from his order might materially advance the ultimate termination of the litigation.[2] We

1. Judge Feinberg's order has been made applicable to nine additional related actions commenced after entry of the order. Pre-trial order of Chief Judge Ryan, entered on September 14, 1962 (S.D.N.Y.).

2. Judge Feinberg decided on the basis that the decision of this court in Moviecolor Ltd. v. Eastman Kodak Co., 2 Cir., 288 F.2d 80, cert. denied, 368 U.S. 821, 82

S.Ct. 39, 7 L.Ed.2d 26 (1961), was controlling. The opinion in that case was concerned with the applicability of the concealment doctrine to a state statute of limitation "borrowed" for the purpose of an action under the Clayton Act, see id. at 82, 83, and was decided on the ground that, although the doctrine applied, the complaint did not allege sufficient facts to give the plaintiff the benefit of it. Al-

granted the defendants' petition for leave to appeal, under 28 U.S.C. § 1292(b), Judges Friendly and Smith not participating. Because of the importance of the question we ordered argument before the court sitting *in banc*. The relevant issues have been so thoroughly explored by the Court of Appeals for the Eighth Circuit [3] and by at least eight district judges [4] that we deem it unnecessary to do more than briefly summarize the reasons for our conclusion.

The intendment of the relevant decisions of the Supreme Court starting with Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), is that all federal limitation statutes are subject to the doctrine of fraudulent concealment, so that if the doctrine applies "the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing. * * *" Id. at 350. Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918), applied this doctrine to the statute of limitations in the land patents act, ch. 559, 26 Stat. 1093 (1891), 43 U.S.C. § 1166. In Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the Supreme Court declined to

"borrow" state law and applied the doctrine in a suit to enforce a federally-created equitable right arising out of § 16 of the Federal Farm Loan Act, 39 Stat. 374 (1916), 12 U.S.C. § 812, which contained no statute of limitation. Speaking for the Court, Mr. Justice Frankfurter stated: "This equitable doctrine is read into every federal statute of limitation." 327 U.S. at 397, 66 S.Ct. at 585.

Thus the doctrine of fraudulent concealment and its application to federal statutes was well known when, starting in 1949,[5] Congress came to deal with proposals to write a limitation period into the antitrust laws in order to bring some uniformity to a field which had been left subject to the confusion of differing applicable state statutes. Section 4B, as finally enacted after six years of proposed legislation and committee hearings, reads:

"Any action to enforce any cause of action under section 4 or 4A shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be re-

---

though Moviecolor is therefore not dispositive of the question now before us, we are in accord with the general views expressed by Judge Friendly in that opinion, as hereafter indicated.

3. Kansas City, Missouri v. Federal Pacific Electric Co., 310 F.2d 271, cert. denied, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962). Relying primarily on its analysis of the legislative history of § 4B, the Court of Appeals ruled as we do here.

4. In addition to Judge Feinberg's ruling below, three other district courts have held that fraudulent concealment tolls the statute of limitations. Public Service Co. of Colorado v. Allen-Bradley Co. (D. Colo., 1962); Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 210 F.Supp. 557 (N.D.Ill., 1962); United States v. General Electric Co. (E.D.Pa., 1962). In two earlier cases, district courts reached the same conclusion without

much discussion. Gaetzi Distributing Co. v. Carling Brewery Co., 205 F.Supp. 615 (E.D.Mich.1962); Dovberg v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa. 1961). Four district courts have held that fraudulent concealment does not toll the statute of limitations. Rinzler v. Westinghouse Electric Corp., 214 F.Supp. 49 (N.D.Ga., 1962); Brigham City Corp. v. General Electric Co., 210 F. Supp. 574 (D.Utah, 1962); Kansas City, Missouri v. Federal Pacific Electric Co., 210 F.Supp. 545 (W.D.Mo., 1962); Public Service Co. of New Mexico v. General Electric Co., (D.N.M., July 25, 1962).

5. On May 20, 1949, S. 1910, "a bill to amend the Sherman and Clayton Acts to provide a uniform period of limitations within which treble-damage actions may be instituted under the antitrust laws," was introduced in the Senate and referred to the Committee on the Judiciary. 95 Cong.Rec. 6493, 81st Cong. 1st Sess.

vived by this Act." 69 Stat. 283 (1955), 15 U.S.C. § 15b.[6]

Among the prior bills which Congress failed to enact were several which expressly provided that in conspiracy cases the statute of limitations would not begin to run until the injured party discovered or had reason to discover the facts on which his claim was based;[7] there are indications in the legislative history that Congress was aware of the issue at stake.[8] But we do not believe that this background to § 4B evinces a congressional intention to enact an absolute period of limitation which would not be subject to tolling in cases of fraudulent concealment. The failure to enact bills containing provisions that would have embodied a discovery provision in the words of the statute is hardly the kind of express negative which we think would be necessary to reverse so well established a policy of the law.[9] As we read the Su-

6. Section 5(b), as amended in 1955, modifies § 4B as follows:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 4A, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 4 is suspended hereunder, any action to enforce such cause of action shall be forever barred unles commenced either within the period of suspension or within four years after the cause of action accrued." 69 Stat. 283, 15 U.S.C. § 16(b).

7. S. 1910, 81st Cong. 1st Sess. (1949), would have added to section 4 of the Clayton Act the following:

"Any action pursuant to this section tion may be instituted within six years after the accrual of the cause of action hereunder; or, in the case of any such cause of action based upon an alleged conspiracy in violation of the antitrust laws, within six years after the discovery by the plaintiff of the facts upon which he relies for proof of the existence of such conspiracy, if the plaintiff has exercised due diligence in seeking to discover such facts."

H.R. 7905, 81st Cong.2d Sess. (1950), proposed amendments to section 4, including the following:

"Any action (including an action brought by or on behalf of the United States) to enforce any cause of action under this section may be commenced within six years after the cause of action accrued or, if the cause of action is based upon a conspiracy in violation of the antitrust laws, after the plaintiff discovered (or, by the exercise of reasonable diligence, should have discovered) the facts relied upon for proof of the conspiracy; and every such action (including an action brought by or on behalf of the United States) shall be forever barred unless commenced within such six-year period."

Other bills which were introduced prior to 1955 include:

H.R. 4985, 81st Cong. 1st Sess. (1949);

H.R. 8763, 81st Cong. 2d Sess. (1950);

H.R. 3408, 82nd Cong. 1st Sess. (1951);

H.R. 1323, 82nd Cong. 1st Sess. (1951);

H.R. 1986, 82nd Cong. 1st Sess. (1951);

H.R. 467, 83rd Cong. 1st Sess. (1953).

8. See, e. g., Hearings before the Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary, 81st Cong. 2nd Sess., ser. no. 14, pt. 5, at 20–23 (1950) [on H.R. 7905]; H.R.Rep. No. 2467, 81st Cong. 2nd Sess. 4; Hearings before the Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary, 82nd Cong. 1st Sess., ser. no. 1, pt. 3, at 100 (1951) [on H.R. 3408]; 96 Cong.Rec. 10442, 81st Cong. 2nd Sess. (1950) [exchange between Mr. Hale and Mr. Celler]; 101 Cong.Rec. 5132, 84th Cong. 1st Sess. (1955) [remarks of Mr. Patman].

9. It should be noted that a provision tolling the statute of limitations until the time of discovery of a violation is not the same as the doctrine of fraudulent concealment, which involves elements beyond the injured party's failure to discover that a violation has taken place. Our opinion here is, of course, confined to the effect

preme Court's opinion in Holmberg v. Armbrecht, supra, that policy is so strong that it is applicable unless Congress expressly provides to the contrary in clear and unambiguous language.

This seems to have been the view of Congressman Celler, Chairman of the Judiciary Committee of the House, who stated in response to a question on the floor of the House that: "In the case of fraud or conspiracy the statute of limitation only runs from the time of discovery." 101 Cong.Rec. 5133, 84th Cong. 1st Sess. (1955). It seems far more likely that when Congress enacted § 4B, it intended that the doctrine of fraudulent concealment continue to apply as it had under Holmberg and its predecessors, than that it be discarded by reference to legislative history.

The appellants have strenuously urged that there are good reasons for never tolling the limitation period in antitrust actions. But it is the sole province of the Congress to weigh such factors and to determine whether well understood and long accepted doctrines are to be changed. If the Congress is disposed to make such a change it must do so by words which cannot be misunderstood.

The order of the district court is affirmed.

LEONARD P. MOORE, Circuit Judge (dissenting).

A resolution of the real conflict here is dependent upon considerations far more basic than upon any analysis or dissection of individual court decisions. In substance, the question is whether Congress has the power to enact a federal statute of limitations under which a cause of action is extinguished after a certain period of time. To say that, of course, Congress has such power but that the time limitation does not begin to run until fraud is discovered or becomes known to the aggrieved party is to beg the question. If some equitable doctrine

of discovery is to be read into every federal statute of limitations then such a doctrine has assumed such quasi-Constitutional dimensions that any statute enacted by the Congress which attempts to put an end to potential litigation within the memory of man—or at least of the witnesses—might for all practical purposes be as unconstitutional as those statutes which offend against the Constitutional amendments themselves. To be more specific, were the statute in question (Clayton Act, § 4B) to read in pertinent part, "shall be forever barred unless commenced within four years after the cause of action accrued regardless of the date of discovery of the fraud giving rise to the action and regardless of fraudulent concealment thereof", such a statute would be in direct conflict with a "fraudulent concealment" presumption.

The proponents of the "fraudulent concealment" doctrine have overwhelming arguments in their favor—mostly emotional. To reward "wrongdoers who are successful in cloaking their unlawful activities with secrecy through cunning, deceptive and clandestine practices" and then "when their machinations are discovered" to give to them "the shield of the statute of limitations to bar redress by those whom they have victimized" would appear to be unconscionable. City of Kansas City, Missouri v. Federal Pacific Electric Company, 310 F.2d 271 (8 Cir.1962). Another court chose to believe that "Congress did not intend that co-conspirators could spin and weave an impenetrable shroud of fraudulent concealment to cloak their illegal acts and then fraudulently render themselves immune with the shield of the statute of limitations to bar redress by those who are the victims of their conspiratorial machinations." Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co. 210 F.Supp. 557 (1962, U.S.D.C.N.D.Ill.). But equally unconscionable, however, would be the case of the poor widow who, left penniless upon the death of her

---

of fraudulent concealment on the running of the statute of limitations, and does not extend to cases involving delayed discov-

ery where there has been no fraudulent concealment.

spouse caused by the gross negligence of some malefactor, has failed to bring an action within the prescribed statutory period.

Every statute of limitations is designed to extinguish rights lawfully acquired and in almost every case highly meritorious reasons can usually be advanced excusing the failure to bring the action within the required time—and many a hardship may result from such failure. To take literally the pronouncement that "This equitable doctrine is read into every federal statute of limitations" (Holmberg v. Armbrecht, 327 U. S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743), is to afford every plaintiff an opportunity to present a myriad of reasons as to why it would be unjust to apply the bar of any statute of limitations in his particular case. Yet the same Justice in the same case said, "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." This is scarcely the kind of language designed to serve as a warning to Congress of its lack of power to enact a statute without a discovery exception. Yet balancing the equities between protection of innocent potential plaintiffs and guilty defendants, legislatures for generations have enacted such statutes even as to fraud cases.

Therefore, unless we are willing to accept the premise that Congress has no power to enact a statute which is not subject to tolling for any reason including fraudulent concealment, the situation as it existed in 1949 (the year in which Congress apparently turned to serious consideration of a statute in the antitrust field) must be examined.

The increasing growth of federal antitrust litigation in the 1940's focused attention upon the lack of a federal statute of limitations in this field. The necessity of turning to the various state statutes to which were added the attendant problems of jurisdiction and of category of action (fraud, penalty, enforcement of a statutory right, etc.) created both confusion and uncertainty. Congress then addressed itself to the enactment of a uniform statute applicable to Clayton Act violations on a nationwide basis.

Little purpose is served by resorting to such pre-1955 doctrines as counsel and the courts claim to emanate from such cases as Bailey v. Glover, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636, Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200, and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. The Congress frequently concerns itself with legislation to alter the effect of, or to clarify uncertainties created by, court decisions. Such a result could never be achieved if every new statute had to be intepreted in the light of the very decisions it was designed to modify or overturn.

The language of § 4B applies to "any cause of action under sections 15 or 15a * * *". Any cause of action would embrace an action for fraud or fraudulent conspiracy. No tolling exception is provided for.[1] The statute does not read "unless there has been fraudulent concealment" or "until discovery of the fraud". If there be ambiguity, it must be found in the words "after the cause of action accrued". Only if "accrued" is to mean "has been discovered" could the statute itself be interpreted as commencing to run from the date of discovery.[2]

---

1. Congress in many statutes containing limitation provisions has shown its ability, where it so desired, to insert "after discovery" clauses or to make exceptions for fraudulent conduct. 31 U.S.C. § 131; 12 U.S.C.A. § 1817(g); 15 U.S.C.A. § 77m, § 78i(e), § 77www; 19 U.S.C.A. § 1621; 26 U.S.C.A. § 6501(e).

2. Causes of action under the Sherman Act accrue when the injury caused by some overt act pursuant to the conspiracy occurs. Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 65, 73 S.Ct. 580, 583, 97 L.Ed. 821 (1953); Tessier v. United States, 269 F.2d 305, 309, 310 (1st Cir., 1959); Steiner v. 20th Century

Since § 4B does not contain any "fraudulent concealment" provision, the courts supporting this theory find it necessary to do judicially that which the Congress purposefully rejected legislatively. There is no doubt that from 1949 on Congressmen Patman and Celler were anxious to secure the passage of a bill which would "insure that there shall be a uniform statute of limitations applicable to all Federal courts so that the statute of limitations in treble-damage actions for anti-trust violations shall not commence to run until the plaintiff learns about the conspiracy provided the plaintiff uses due diligence." The need for such a bill arose because there was no Federal statute of limitations on treble-damage actions and because "a plaintiff [might] lose his day in court because the defendants have succeeded in concealing their conspiracy from outsiders." Hearings Before the Subcommittee on the Study of Monopoly Power of the House Committee on the Judiciary, 81st Cong., 2d Sess., ser. 14, pt. 5, p. 45 (1950).

Both the House bill (H.R. 4985) and the Senate bill (S. 1910) contained tolling provisions. If there had been any such principle as is now being elevated virtually to constitutional dimensions there would have been no need for the vigorous advocacy in support of the tolling exception. The iniquity of permitting the wrongdoer to conceal his crime, thereby winning immunity, was featured by the bill's proponents. Others argued that the statutory period should be sufficient for the discovery of the cause of the injury.

The fate of the "discovery" provision has been adequately described in the majority opinion. In short, it was rejected by the Congress. In 1955 when the bill was finally passed, Congressman Patman recognized the need for the insertion of the words "and become known" after the word "accrued" in order "to emphasize and make clear in the law that the period of limitations shall not commence to run until at least covert wrongs have been discovered" (101 Cong.Rec. 5132 (1955)). But Congress did not accept or adopt the amendment.

Despite the assertions in the opinions supporting the "fraudulent concealment" doctrine that a search is being conducted to ascertain Congressional intent, actually the various decisions upholding the tolling doctrine rely almost entirely upon a colloquy in 1955 between Congressmen Celler and Patman. It must be remembered that these two Congressmen were in the forefront of the unsuccessful effort to have "discovery" inserted in the bills proposed during the preceding six years. There is no evidence in report, debate or otherwise of any Congressional assumption that there was to be written into every Federal statute of limitations an equitable doctrine of tolling until the fraud were discovered. However, the Eighth Circuit in its recent decision in City of Kansas City v. Federal Pacific Electric virtually founds the result reached upon this colloquy. The Court states that the colloquy "demonstrates that Congress had no intention of destroying the existing doctrine of fraudulent concealment". To say that a colloquy of two Congressmen known to be advocates of the rejected amendment establishes the intent of Congress is an unwarranted speculation which I cannot accept. Quite apart from this case, such an approach could well have most serious consequences and would enable any two Congressmen, who chose to have a colloquy (expressing a view contrary to, or in enlargement of the language of, any bill) spread upon the Congressional Record, with the aid of such court interpretation to nullify any legislation enacted by the Congress. Here there is no evidence that the Senate ever heard the col-

Fox Film Corp., 232 F.2d 190 (9th Cir., 1956); Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196 (9th Cir., 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.

Ed. 680 (1951); Universal Film Exchange, Inc. v. Momand, 172 F.2d 37 (1st Cir., 1948), cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949).

244

loquy of the Congressmen. Therefore, it can scarcely be assumed that each Senator cast his vote in reliance thereon. Even in the House, there was nothing to show how many other Congressmen heard the colloquy or relied upon it in voting. If such speculation is to enter into the decision it would be far more reasonable to assume that the majority in Congress voted for the bill which did not contain the "discovery" proviso because discovery had been eliminated from the many previously rejected bills. And there is nothing to show that either House or Senate were determined not to destroy an existing doctrine of fraudulent concealment or that they were aware that there was any such doctrine.

It may well be that a "discovery" or "fraudulent concealment" amendment should be added to § 4B but the public policy and the morals issues which are involved in such legislation should be for the Congress to resolve—not the courts. Otherwise the courts in addition to their other endeavors assume a veto power over Congressional enactments whenever their views on such issues differ with those of Congress.

The courts favoring the plaintiffs' position in the many pending cases have chosen to accept the "single Congressman" as disclosing true Congressional intent rather than to heed the many committee reports on the subject. This approach would appear to be quite contrary to the Supreme Court decisions outlining the clues to be examined in the search for such intent, namely, committee reports and not comments from the floor. Federal Trade Commission v. Anheuser-Busch, Inc., 363 U.S. 536, 80 S. Ct. 1267, 4 L.Ed.2d 1385 (1960); United States v. International Union, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 475, 41 S.Ct. 172, 65 L.Ed. 349 (1921); Pennsylvania, R.R. Co. v. International Coal Mining Co., 230 U.S. 184, 188–189, 33 S.Ct. 893, 57 L.Ed. 1446 (1913); Binns v. United States, 194 U.S. 486, 495, 24 S.Ct. 816, 48 L.Ed. 1087 (1904).

The problem here in my opinion is quite different from estoppel (Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770). It cannot be solved by the semantics of substantive-procedural debate. The many practical questions so well analyzed and posed by Judge Christensen in his thoughtful opinion in Brigham City Court v. General Electric Co., 210 F. Supp. 574 U.S.D.C.D.Utah, 1962, do not supply the answer, persuasive as they are on an *in terrorem* (at least to trial judges and trial counsel) theory. The finely spun arguments of counsel derived from their conflicting analyses of the Bailey-Glover, Holmberg and Moviecolor triumvirate merely jab at the periphery—not to the heart of the issue. That issue is whether there should be any time limitation in antitrust conspiracy actions.

As a practical matter, no well organized conspiracy will ever advise its victims of its machinations. Therefore, years and decades may elapse before discovery. Possibly it would be desirable to have no statute of limitation in this field. But discussion of this desideratum is academic. Congress has acted. It enacted a statute of limitations in the antitrust field. It rejected the proposed "discovery" amendment. Certain courts disapprove of this Congressional action. They reinsert the "discovery" clause and, in effect, enact a court bill to take precedence over the present statute. The result is for all practical purposes no statute of limitation. That this is done under the guise of judicial prescience which can divine the true intent of the Congress does not alter the effect of the courts' actions. Now that the issue has been presented so squarely in the many decisions arising out of a common situation, it may be that Congress will endeavor to decide whether there should be a reasonable time limit in conspiracy cases or whether litigants should be permitted to go back to the time of Benjamin Franklin, who probably created all the trouble by sealing up a bolt from the blue in a little glass jar to be sold to future generations, little knowing

whether pursuant to open competition or clandestine conspiracy.

In summary, I believe the solution of the public policy and public morals aspect of the situation is for the Congress and not the courts. The bill as enacted clearly does not provide for discovery. Therefore, I cannot support the conclusion of the majority who in my opinion, enact, in effect, a statute deliberately rejected by Senate and House.