**CANADIAN INGERSOLL–RAND COMPANY, Limited, Plaintiff,**

**v.**

**D. LOVEMAN & SONS, INC., et al., Defendants.**

**Civ. No. C 63–572.**

United States District Court
N. D. Ohio, E. D.
March 20, 1964.

Robert W. Poore and Patrick F. McCartan (of Jones, Day, Cockley & Reavis), Cleveland, Ohio, and Harold F. McGuire (of Wickes, Riddell, Bloomer, Jacobi & McGuire), New York City, for plaintiff.

Jerome N. Curtis, Cleveland, Ohio, for defendants.

CONNELL, Chief Judge.

The first count of the complaint alleges a diversity claim by which the plaintiff charges the defendants with conspiring to defraud the plaintiff by bribing the plaintiff's chief buyer. After the alleged conspiracy supposedly became a successful fact, the defendants are charged with engineering an elaborate scheme to conceal their conspiracy. It is specifically averred that the defendants paid the buyer at least $21,000 in cash and

other consideration over a period of time beginning on or before January, 1955 and running at least until May, 1960. In return, the buyer allegedly misrepresented to plaintiff the state of market conditions and conspired with defendants and others to extract exorbitant prices from the plaintiff under the guise of arm's length bargaining. It is then averred that the plaintiff had no knowledge of such misconduct until May, 1961. Paragraph 11 of the complaint purports to describe how the complainant first became aware of the alleged conspiracy.[1] The defendant moves the Court to strike this paragraph because the averments therein are evidentiary matter, immaterial, and their presence in the complaint is prejudicial to the defendant.

## I

██ It is well established in this District, the Sixth Circuit and Federal Courts in general, that an allegation should not be stricken unless it is clear that it can have no possible bearing upon the subject matter of the litigation. 2 Moore, Federal Practice 2317 and authorities cited therein. As Judge Freed stated in H. K. Porter v. Bremer, 11 F.R.D. 89, 90 (N.D.Ohio 1950):

"This Court has repeatedly asserted that motions to strike are not regarded with favor. Generally speaking they should be granted only where the allegations are clearly immaterial to the controversy and are prejudicial to the defendant."

The materiality of these allegations is unavoidably obvious. The complaint in Count I asserting a claim of fraud must contend with the Ohio limitation statute (Ohio Rev.Code § 2305.09) to obtain relief; that statute specifically states that a cause of action for fraud shall not accrue until the fraud is discovered; therefore, the averments describing how and when the fraud was discovered are clearly material. The averments of the first count are incorporated into the second count, where the plaintiff will be confronted with a similar problem, so these averments are material to the second count. Atlantic City Elec. Co. v. General Electric Co., 312 F.2d 236 (2d Cir. 1962), cert. denied 373 U.S. 909, 83 S. Ct. 1298, 10 L.Ed.2d 411 (1963).

██ The objection that Paragraph 11 constitutes evidentiary matter is not well taken. Matter which may be described as "evidence" need not be stricken so long as it assists in clarifying the dispute. H. K. Porter Co., Inc. v. Bremer, 11 F.R.D. 89, 90 (N.D.Ohio 1950). In view of the requirement of Rule 9(b), which requires that circumstances surrounding fraud shall be alleged with particularity, the Court declines to strike the averments which describe the uncovering of the alleged conspiracy. Cf. Mutual Life Ins. Co. of New York v. Simon, 15 F.R.D. 336 (S.D.N.Y.1954). These admittedly evidentiary matters are, however, relevant to the controversy and "provide a background for an understanding of the charges." United States v. Crown Zellerbach Corp., 141 F.Supp. 118, 131 (N.D.Ill.1956).

## II

██ The defendants next request that paragraph 13 of the complaint be stricken on the ground that the averments therein are immaterial and prejudicial to the defendants. It reads thus:

"Defendants made large profits, the exact amounts of which are presently unknown to plaintiff and can be determined only by an accounting, by virtue of their knowing and fraud-

---

1. Paragraph 11, in substance reads thus: Commencing on or about May 31, 1961, representatives of the Canadian Income Tax Department visited plaintiff's head office * * * and in the course of their visit made inquiries concerning [the buyer] and certain other employees which caused plaintiff * * * to commence * * * investigation * * *. In response to questions propounded to him * * * [the buyer], who had theretofore concealed from plaintiff the acts [complained of] eventually confessed * * *. Similarly, when interviewed on or about October 24, 1961, defendants Darwin Loveman and Herbert Merlin * * * eventually confessed that certain of such acts had been committed.

ulent participation with MacLennan in his breach of fiduciary duty and the sales of steel as hereinabove alleged. Defendants hold such profits and their avails as constructive trustees for plaintiff."

Since this first count of the complaint alleges an action for conspiracy and fraud brought to this Court by means of diversity, the Court must apply the law of Ohio in determining the substantive rights of the parties. If Ohio law restricts the plaintiff's recovery, if successful, to the disparity between the contract price and the prevailing market price, then averments addressed to the extent of defendants' profit are irrelevant. If, on the other hand, the defendants must surrender any benefit which accrued as a result of their alleged complicity with the allegedly disloyal agent of the plaintiff, then such averments are proper.

The defendant cites cases holding that a defrauded buyer of property is entitled to recover the difference between the actual value and the misrepresented value. Molnar v. Beriswell, 122 Ohio St. 348, 171 N.E. 593 (1930); Gray v. Gordon, 96 Ohio St. 490, 117 N.E. 891 (1917); Elder v. Shoffstall, 90 Ohio St. 265, 107 N.E. 539 (1914). To further press his point, counsel cites Bartholomew v. Bentley, 15 Ohio 660 (1846) for the proposition that profits of a fraudulent scheme are immaterial to the measure of recoverable damage. We read the dictum relied on (at 669) as an assertion by the Court that profit by the defrauder is not a prerequisite to recovery by his victim but this Court cannot accept the conclusion advanced by the defendants that the alleged victim's recovery is limited to the amount of overpayment.

■ This is not a mere fraud case; this action involves an alleged interference with an employment relation whereby the defendant supposedly pocketed exorbitant profits through the alleged perfidy of the plaintiff's chief buying agent. It is an elementary proposition that an agent operates under a fiduciary relationship as to his principal. It is the presence of this relation, and its

alleged corruption, which brings this case closer to the principles governing third-party complicity with trustees' frauds.

■■ It is well established in Ohio that a knowing participant, as well as the errant fiduciary, is "equally amenable" to account for wrongfully diverted trust property. Shuster v. North American Mortgage Loan Co., 139 Ohio St. 315, 344, 40 N.E.2d 130 (1942). One who knowingly joins a fiduciary in purchasing for profit the trust property in unlawful circumstances becomes jointly and severally liable with him for *resultant profits*. In re Van Sweringen Company, 119 F.2d 231, 234 (6th Cir. 1941). (Emphasis added.)

■ Thus it is clear that Ohio law would afford no advantage or benefit to the participating third party which would be denied to the agent himself; they stand on equal ground. A defrauding agent is not only compelled to account for profits derived from his illicit transactions, but he also forfeits his right to compensation otherwise due him. Hey v. Cummer, 89 Ohio App. 104, 141, 97 N.E.2d 702 (1950). From this we must necessarily conclude that a co-conspirator must likewise forfeit even those legitimate profits he would ordinarily be entitled to receive. This conforms to the position taken by the Restatement of Agency 2d which approaches most closely the problem before us:

> "§ 312: A person who * * * intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal * * * Comment (d): In an action for unfair competition based upon the corruption of one's servant by a competitor, the principal can claim either his lost profits or *those made by his competitor*." (Emphasis added.)

After sorting these analogous authorities and weighing the artful presentations of counsel, the Court concludes that if the plaintiff is successful in proving the alleged conspiracy, the defendants will be required to relinquish all profits which it

gleaned from these transactions. The motion to strike paragraph 13 is accordingly overruled.

## III

 Defendants seek dismissal of the second count of the complaint, insisting that the plaintiff would not be entitled to relief under 15 U.S.C.A. § 13(c) [2] under any set of facts. Commercial bribery as alleged by the plaintiff here is within the proscription of that section. Fitch v. Kentucky-Tennessee Light & Power Co., 136 F.2d 12, 149 A.L.R. 650 (6th Cir. 19). The gist of defendants' plea is the contention that the above Act, popularly known as the Robinson-Patman Act, does not apply to transactions occurring in foreign commerce. The defendants rely upon the limitation found in paragraph (a) of Section 2 of that Act (15 U.S.C.A. § 13(a) which, in substance, proscribes against discrimination among customers where the commodities are sold "for use, consumption, or resale within the United States or any Territory * * *." [3] The defendants seek to engraft the interstate commerce limitation upon all paragraphs, including paragraph (c) which is the basis of this count of the complaint.

 This precise point was considered in Baysoy v. Jessop Steel Co., 90 F.Supp. 303 (W.D.Pa.1950), where the Court held that the same contention advanced here "is completely erroneous".

Ibid., 90 F.Supp. at 305. The opinion of Judge Follmer is well-reasoned and thorough; this Court can see no reason to disagree with his conclusion. The opinion discusses the entirety of Title 15 and its intended effects; the Court considers language as it is used throughout that title, rather than extracting phrases from clauses. A careful reading of the Congressional debate surrounding § 2(a) does not disclose any intent to apply the limitation to any other sections of the bill. 80 Cong.Rec.6333 (1936). The co-author of the bill, Congressman Patman, clearly states in his book on the Act:

> "This delimitation of 2(a) is not found in the remaining clauses of the Act, which apply to payment for the use of services and facilities used in furthering the movement of the goods involved in the sales transaction. These clauses apply to any person engaged in commerce * *. To determine the limit and scope of such commerce we must turn to the definition found in the Clayton Act itself. Patman, Robinson-Patman Act 208."

The definition section of the Clayton Act defines commerce so as to include foreign trade. 15 U.S.C.A. § 12 (1963). Cf. also Oliver Bros. v. Federal Trade Commission, 102 F.2d 763 (4th Cir. 1939); Quality Bakers of America v. Federal Trade Commission, 114 F.2d 393 (2d Cir.

---

2. § 13(c) "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

3. § 13(a) in substance reads thus: "It shall be unlawful for any person engaged in commerce, in the course of such

commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, *where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof* or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *." (Italics ours.)

1940). The Court concludes, therefore, that the provisions of § 2(c) of the Robinson-Patman Act apply to export sales, and the defendants' motion to dismiss Count 2 of the complaint is overruled.[4]

4. The Court is not at liberty to give force to the professorial dissents of commentators who seek judicial enactment of their personal views. Mr. Rowe in his book, Price Discrimination Under the Robinson-Patman Act, at 82, characterizes the Baysoy decision as "aberrational". But neither the author nor counsel for the movant here have convinced this Court that a limitation found in one single clause should be engrafted upon every clause in a paragraph when the spirit of the entire act and the title into which it is incorporated militate for the opposite conclusion.